## TILLMAN *v.* THE STATE.

1. Where upon the trial of one for murder the accused introduced evidence regarding the character for violence of the person he was charged with killing, it was not error requiring a new trial that the court failed to instruct the jury upon the subject to which such evidence related, in the absence of a timely written request for such instructions.

2. Upon the trial of the accused for murder the jury rendered the following verdict: "We, the jury, find the defendant guilty of murder, and recommend the mercy of the court." The court charged the jury as follows: "Now in this case, gentlemen of the jury, if you find the defendant guilty of murder as charged in the bill of indictment, the form of your verdict would be, 'We, the jury, find the defendant guilty,' and that would mean guilty of murder, and the death penalty would follow. If you find the defendant guilty of murder and do not wish him to suffer the death penalty, then the form of your verdict would be, 'We, the jury, find the defendant guilty, and recommend that he [be] punished by imprisonment in the penitentiary for life,' and that would be the penalty enforced. It is in the jury's discretion unlimited by any rule of law whatever, when they find a defendant guilty of murder, to save him from the death penalty by a recommendation to life imprisonment as a punishment." *Held,* there was no error in failing to charge the jury "on the subject of the effect of a verdict of guilty with a recommendation to mercy." Such failure did not mislead the jury into the belief that the rendition of the verdict returned by them would cause a punishment to be inflicted on the accused less than that of imprisonment in the penitentiary for life.

3. There was testimony of witnesses for defendant that the person with whose murder he was charged, at a time and place different from that at which the killing occurred, threatened the life of the defendant and assaulted him with a knife by attempting to stab him therewith. The court instructed the jury upon the subject of voluntary manslaughter, and that of justifiable homicide, and in doing so charged the sections of the code applicable to these subjects; and the mere failure of the court to refer to such threats and assault in his charge upon voluntary manslaughter and justifiable homicide is not cause for a new trial

4. The evidence supported the verdict.

MARCH 14, 1911.

Indictment for murder. Before Judge Martin. Twiggs superior court. November 1, 1910.

*M. J. Carswell,* for plaintiff in error.

*H. A. Hall, attorney-general,* and *E. D. Graham, solicitor-general,* contra.

HOLDEN, J.. The plaintiff in error (hereinafter called the defendant) was convicted of the murder of Richard Phillips, and to the order of the court refusing him a new trial he excepted. There was evidence in behalf of the State; substantially as follows: The defendant came to the house of another person on the night of September 10, 1910. The house consisted of only one room, 10 feet wide and 15 feet long, and had only one window and one door. One witness testified the defendant came to the door, while others testified he came in the house. He took a pistol from a man whose name was Atticus Carswell, who was sometimes called Son Atticus, and said, "I am going to kill him." The deceased shut the door. The defendant ran to the window and from the outside shot the deceased, who was in the house near the door. There was testimony that when the defendant fired through the window the deceased had his arms up and his hands on the door. After defendant fired two shots the deceased went out of the house and two other shots were heard on the outside. The deceased was found dead near the house, with a wound from a pistol ball which entered under his arm. A knife was found in his pocket unopened. A stream of blood was found from the door to the place where the body of the deceased was lying. The deceased made no effort to cut the defendant, nor did he in any way give the defendant any provocation to shoot him. The deceased did not have the reputation of being a violent man. In behalf of the defendant Ella Walker testified as follows: Her home was not the one at which the shooting occurred. Between sunset and dark "on the same day of the shooting, shortly before the shooting," she and the defendant, with others, were sitting on the porch at the house. The deceased "ran up the steps and stabbed at" the defendant. The deceased cursed the defendant and threatened to kill him. Another witness gave substantially the same testimony. There was testimony regarding the character of the deceased for violence, and that he had a "bad reputation for violence." The defendant made the following statement: "I went over there to Walker's house. We was sitting down on the porch talking. Ella hollowed to me, 'Look out, Joe.' I looked behind me, and Dick Phillips was stabbing at

me with a knife. I jumped down off of the porch, and asked him what was the matter with him. He said, 'I am going to kill you, you God damned son of a bitch, you.' I said, 'Dick, what do you want to kill me for? I haven't done anything to you.' He said, 'You know what I want to kill you for, about this woman.' I said, 'What woman?' He said, 'Emma.' I said, 'Emma is not none of yours; is she?' He said, 'You heard what I said. I will kill you before the sun rises in the morning.' I said, 'Dick, if you want to fight me that bad, put down your knife and come out here, and we will fight it out.' He started with his knife in his hand. Ella grabbed him, and said, 'Dick, I wouldn't do that.' I said, 'Emma, hand me my hat.'. He taken and kicked it out on the porch to me. I broke and run down to his brother Joe's house to tell him about the fuss me and Dick had. I goes on up to the commissary and stayed up there, and decided to go home and put on my overalls and go up to Will Harris's house. I goes on and gets about this house where these boys were shooting dice. George said, 'Who is that?' I said, 'It is me.' He said, 'Come in and take a part with us in the dice game.' I said, 'No, I will go and change overalls.' He said, 'No, come on in.' I walked in, and Dick shut the door behind me. He said, 'You God damned son of a bitch, I told you I was going to kill you.' I broke and run around the crowd, and said, 'Boys, don't let Dick cut me, for I haven't done anything to him.' By me running through the crowd and around the crowd to keep him from cutting me, I run around Son Atticus and seed his gun in his pocket, and I snatched it and broke to the window and jumped out of the window. By the window being on the side of the hill of the railroad, I fell. He was reaching out of the window at me that way with the knife. Then I shot the gun. That is the way it was. He was reaching out of the window after me with his knife, and I shot."

1. One assignment of error is as follows: "Because the court erred in failing to charge the jury on the subject of the bad character of the deceased, there being evidence as to such bad character introduced by the defendant on the trial. This was. error, because the defendant was relying, as his defense, upon the plea of self-defense, based partially upon the bad character for violence of the deceased. No request, oral or written, was made to charge." In the absence of a timely written request, there was no error requir-

ing a new trial in the failure of the court to charge the jury in regard to the character of the deceased for violence. This was merely one of the facts to be considered by the jury in determining the truth as to how the homicide occurred; and if the defendant desired any specific instructions in regard thereto, he should have made a request in writing.

2. Another assignment of error is as follows: "Because the court erred in failing to charge the jury on the subject of the effect of a verdict of guilty with a recommendation to mercy of the court. This is error, because, while such a verdict is a good verdict, and carries with it a life sentence, it is possible, if not highly probable, that some, if not all, of the jurors believed, in the absence of any charge on the subject of a verdict of guilty with a recommendation to mercy, that such a verdict would subject the defendant to only a short term of imprisonment in the penitentiary." The verdict rendered by the jury was as follows: "We, the jury, find the defendant guilty of murder, and recommend the mercy of the court." The court charged the jury as follows: "Now in this case, gentlemen of the jury, if you find the defendant guilty of murder as charged in the bill of indictment, the form of your verdict would be, 'We, the jury, find the defendant guilty,' and that would mean guilty of murder, and the death penalty would follow. If you find the defendant guilty of murder and do not wish him to suffer the death penalty, then the form of your verdict would be, 'We, the jury, find the defendant guilty, and recommend that he [be] punished by imprisonment in the penitentiary for life,' and that would be the penalty enforced. It is in the jury's discretion unlimited by any rule of law whatever, when they find a defendant guilty of murder, to save him from the death penalty by a recommendation to life imprisonment as a punishment. If you find the defendant guilty of voluntary manslaughter, then the form of your verdict would be, 'We, the jury, find the defendant guilty of voluntary manslaughter.' If you find the defendant not guilty, or if you have a reasonable doubt as to his guilt, the form of your verdict would be, 'We, the jury, find the defendant not guilty.'" While the court did not inform the jury what punishment would follow a verdict finding the defendant guilty of murder, with a recommendation to the mercy of the court, we do not think the jury had any intention, in rendering the verdict found, except that the

defendant should be punished by imprisonment in the penitentiary for life. The court fully charged the jury as to the forms of the different kinds of verdicts they were authorized to render in the case; and in order to have the defendant punished by confinement in the penitentiary for life, a verdict of guilty with a recommendation in terms that this be done would have been more in accordance with the instructions of the court; but we are satisfied that this punishment was intended by the jury in rendering the verdict offered the court and accepted by it. The court in effect told the jury if they found the defendant guilty of murder, one of two penalties must be visited upon him. In neither of the forms given by the court was the word "murder" contained, but the jury in their verdict stated that they found the defendant guilty of the offense of murder. In finding him guilty of murder, the jury must have understood that one of these two penalties named by the court in his charge would be inflicted on the defendant, and a verdict of guilty of murder with a recommendation to mercy, such as the jury rendered in this case, means, under the Penal Code (1910), § 63, that the punishment following such a verdict is imprisonment in the penitentiary for life. Part of that section is as follows: "Whenever a jury, in a capital case of homicide, shall find a verdict of guilty, with a recommendation of mercy, instead of a recommendation of imprisonment for life, in cases where by law the jury may make such recommendation, such verdict shall be held to mean imprisonment for life." We do not think there is any merit in the contention that the failure of the court to charge the jury what would be the effect of a verdict finding the defendant guilty, with recommendation to mercy, misled the jury into the belief that such a verdict would subject the defendant to punishment by confinement in the penitentiary for a term less than that of his natural life.

3. Another assignment of error is as follows: "Because the court erred in failing to charge the jury on the subject of previous threats and attempts on the part of the deceased to injure the defendant shortly before the homicide. This is error, because the jury should have been instructed on the subject of such prior threats and attempts to injure the defendant, as being, or not being, in the opinion of the jury, reasons for reducing the offense from the grade of murder to the grade of voluntary manslaughter;

and because the defendant was relying on such prior threats and attempts to injure him, as reasons why, at the time of the killing, ·the defendant believed he was about to be slain by the deceased; and because the court should have applied the law of the reduction from murder to voluntary manslaughter and the law of reasonable fears to the subject of previous threats and previous attempts to injure the defendant by the deceased. This is especially true in view of the fact that there was evidence introduced by the defendant, absolutely uncontradicted, that just a short while before the killing there were threats made by the deceased to kill the defendant, and attempts made by the deceased to cut the defendant with a knife. No request, oral or written, was made to charge." There was evidence in behalf of the defendant, that, at a time and place other than that at which the homicide occurred, the deceased threatened the defendant's life and attempted to cut him with a knife. The defendant in his statement contended that the reason he shot at the deceased was because of an assault made on him at the time of the shooting. The court charged the jury on the subject of voluntary manslaughter, and on that of justifiable homicide. In the instructions given on these subjects, the court charged the sections of the code applicable thereto. If more specific instructions (which were applicable) were desired, they should have been requested. The mere failure of the court to charge upon the subject of the "threats and attempts" referred to will not cause a new trial. In this connection, see *Rogers* v. *State*, 128 *Ga.* 67 (57 S. E. 227, 10 L. R. A. (N. S.) 999, 119 Am. St. R. 364).

4. The only other assignments of error are that the verdict is contrary to law and evidence and without evidence to support it. The evidence was sufficient to warrant the verdict, and no cause for a new trial appears.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*