### HICKS v. THE STATE.

1. Where evidence was offered and counsel remarked, "If your honor please, I don't see what business they were in has got to do with the case," and the court replied, "I will let it go in," and counsel added, "We would like to get in the record that we object to it," and the court said, "It is overruled," and in the ground of the motion for new trial, relating to this evidence, the movant says that he insists that it was irrelevant, and that the objection to the evidence was in substance an objection to its relevancy and was so understood by the court and counsel and acted on by the court, but the judge certifies, that "these contentions were not passed upon by the court on the trial of the case," this court will not treat the statement of counsel that the evidence was objected to as irrelevant as being duly certified.

2. Evidence of experiments out of court, if made under similar conditions and directly illustrating a material issue in the case, may be given. If made under changed conditions or in such circumstances that the experiments might be worthless or misleading, an objection to the testimony should specify these grounds of objection; and a mere general objection to the evidence, that it relates to an experiment not made in the presence of the accused, is insufficient.

3. Error is assigned upon the following charge of the court to the jury: "It is for you to determine from the testimony in the case whether any contradictory statements have been proven to have been made by such witness or witnesses; and whether such contradictory statements, if any have been established, of which you are the judges, are matters relevant to the testimony and to the evidence in the case." The criticism upon this charge is that "it was error to submit to the jury the question whether or not contradictory statements were relevant to the testimony and the case, this being a question for the court to decide and not the jury." This charge is not an accurate statement of the law, but in view of the entire charge and the evidence it is not cause for a new trial.

4. The case was not one depending wholly upon circumstantial evidence, and it furnished no ground for a new trial that the court failed to charge the law touching such evidence.

5. A charge that voluntary drunkenness is no excuse for crime, but that

the jury can consider drunkenness, like any other fact, to illustrate intent and motive and otherwise shed light on the transaction, is not erroneous, where, as in the present case, it is authorized by the evidence.

6. An exception to a correct charge because of failure to give in the same connection some other pertinent legal proposition is not a good assignment of error.

7. The failure of the court to charge the jury as to the form of their verdict in case they should find the defendant guilty of involuntary manslaughter is not cause for the grant of a new trial, inasmuch as the jury returned· a verdict finding the defendant guilty of murder.

8. The court did not err in refusing a new trial upon the grounds of the motion based upon alleged newly discovered evidence.

NOVEMBER 18, 1916.

Indictment for murder. Before Judge Bartlett. Paulding superior court. June 3, 1916.

Sam Hicks was tried under an indictment charging him with the offense of murder, it being alleged that he feloniously shot and killed Ed Fennell. Two witnesses testified that they saw the shooting; one of them was introduced by the State, and the other by the defendant. The witness introduced by the State was a nephew of the decedent, and was a boy about 13 years old. He testified, that he was present when Ed Fennell was killed; that it was about 5 o'clock in the afternoon; that the defendant shot him with a pistol; that witness was about fifty yards away from them when the shot was fired; that the deceased, the accused, and George Prance were together and went to the edge of a field; that the deceased was going home, and the accused was going from his home; that when they got to the edge of the field the witness. heard ·a gun fire; that he heard the deceased call for him, and he asked what was wanting, but no reply was made. He then went and jumped on a stump, and just as he did so he saw the defendant shoot. The expression used by the witness was, "I saw Sam [Hicks] throw the gun on Uncle Ed [Fennell] and shoot him down. I seen him fall, and I thought he was going to shoot again. That scared me and I ran towards the house, but I was looking back at him. After this, Sam Hicks ran back towards the branch, and then towards Uncle Ed, and then back, and then right up the hill towards his home. He ran as fast as he could." The same witness gave other testimony locating himself at a period of time just before the first shot was fired and between the firing of the first shot and the second shot, and his position at the time of the firing of the

fatal shot and a little while afterwards. The testimony of the other eye-witness to the homicide is, in substance, that the accused and the decedent were both drinking heavily; that the accused fired off his pistol once, and the decedent told him to "pop it again;" that Hicks then fired a second time, and the decedent said, "Pop it again." Hicks was drunk and apparently firing recklessly. Other testimony was introduced by the State and by the defendant. The jury returned a verdict of guilty, with a recommendation of mercy. The defendant made a motion for a new trial, which was overruled.

*J. J. Northcutt, W. E. Spinks, C. D. McGregor, P. L. Bartlett, S. W. Ragsdale,* and *A. J. Camp,* for plaintiff in error.

*Clifford Walker, attorney-general, J. R. Hutcheson, solicitor-general, C. B. McGarity,* and *Mark Bolding,* contra.

BECK, J. (After stating the foregoing facts.) The testimony of the State in this case authorized a verdict of guilty of murder. There was sufficient evidence to show that the defendant, while in a state of intoxication, deliberately shot and killed the decedent. There was some testimony to show that the two were not entirely friendly, though there was an abundance of testimony to show that they were perfectly friendly. The defendant's statement makes a case of accidental shooting. The witness Prance, who saw the killing, gave testimony which would have authorized the jury to find the defendant guilty of involuntary manslaughter.

1. To what is ruled in the first headnote we desire to add, that while counsel insisted that the court understood his objection to the evidence referred to in this ground was based upon its irrelevancy, the objection was not by any means in proper form. For counsel to say, in the presence of the court, "I don't see what business they were in has got to do with the case," would, as a matter of course, be generally understood between people engaged in conversion to mean that what had just been said by one of the parties was irrelevant; but when counsel desires a distinct ruling by the court, the court's attention should be directed to the question of the irrelevancy of the evidence objected to, by the distinct statement that it is objected to on the ground of irrelevancy. If counsel had stated to the court, addressing the court, "I object to the evidence on the ground that it is irrelevant," the attention of the court would have at once been arrested and directed to the

question at issue. A trial judge has many things surrounding him to distract his attention in the progress of any trial, and especially in the progress of a trial for murder; and when counsel desires a ruling upon a question as to whether evidence should be admitted or repelled, he should secure the attention of the court, addressing himself to the bench and stating the grounds of objection to the evidence which he claims to be objectionable, and secure a ruling upon the motion which he has made or the objection which he has raised; and if he does not do this, but contents himself with remarking, relatively to the testimony that is being delivered by a witness, "I don't see what that has got to do with the case," such an objection will not avail him in this court, when the judge refuses to certify that the evidence was objected to on the ground of irrelevancy, but certifies that this contention was not passed upon.

2. Certain experiments were made by persons at and near the scene of the homicide, to test the opportunity of a witness, claiming to be an eye-witness to the homicide, for seeing and observing the act and conduct of the accused at the time of the shooting. This evidence was objected to on the ground that it related to an experiment between O'Neal, the witness testifying, and the boy introduced by the State, who testified as to the homicide, "as to the alleged places referred to and pointed out by the boy, when the defendant was not present, and that such evidence would not be admissible." This was not a good objection. Testimony may be received as to the results of experiments, where it is shown that the conditions are the same; and experiments may be made, of course, out of the presence of the defendant and out of the presence of the court, under proper conditions. The objection here raised by counsel was the broad objection based upon the fact that it was merely evidence of an experiment,—not that the experiment was made under altogether different circumstances, where the conditions were not the same, nor that the experiment was as to some collateral matter. Consequently there was no error in overruling the objection. *Taylor* v. *State,* 135 *Ga.* 622 (70 S. E. 237); 5 Enc. Ev. 473 et seq., and cases cited; 3 Jones on Evidence, § 410.

3. Error is assigned upon the following charge of the court: "It is for you to determine from the testimony in the case whether any contradictory statements have been proven to have been made by such witness or witnesses; and whether such contradictory

statements, if any have been established, of which you are the judges, are matters relevant to the testimony and to the evidence in the case." The criticism upon this charge is "that it was error to submit to the jury the question whether or not contradictory statements were relevant to the testimony and the case, this being a question for the court to decide, and not the jury." This charge was neither entirely accurate nor apposite. In section 1052 of the Penal Code it is provided that "A witness may be impeached by contradictory statements previously made by him as to matters. relevant to his testimony and to the case." This is a rule of evidence for the guidance of the court, and does not properly find a place in a charge instructing the jury as to the law of the case. The trial judge admits or repels testimony that is offered, accordingly as it may appear competent or not competent. But we do not think that the error in this charge was of sufficient materiality to require the grant of a new trial.

4. "The case was not one depending wholly upon circumstantial evidence, and it furnished no ground for a new trial that the court failed to charge the law touching such evidence." *Cliett* v. *State,* 132 *Ga.* 36 (63 S. E. 626).

5. A charge that voluntary drunkenness is no excuse for crime, but that the jury can consider drunkenness, like any other fact, to illustrate intent and motive and otherwise shed light on the transaction, is not erroneous, where, as in the present case, it is authorized by the evidence. Park's Penal Code, § 39, and cases cited.

6. Error is assigned upon the following charge of the court: "If you find that the killing of Ed Fennell, if any has been shown, was done by the defendant, Sam Hicks, on the occasion in question, without any intention to do so, but that it was done in the commission of an unlawful act which probably might produce such a consequence in an unlawful manner, in that event you would be authorized to find the defendant guilty of involuntary manslaughter; but if such involuntary killing, if any has been shown, of which you are the judges, happened in the commission of an unlawful act by the defendant, Sam Hicks, which in its consequences naturally tended to destroy the life of Ed Fennell, and that Ed Fennell was killed by the defendant under such circumstances, then the offense would be murder." This charge is criticised upon

the ground that it was "erroneous in that the court failed and omitted to specify the grade of involuntary manslaughter referred to in said charge, of which the jury might find defendant guilty, and also failed to specify the penalty of such grade." The charge. itself was substantially a correct statement of the law, and was applicable to the case under the evidence. The inaccuracy in the charge could not be hurtful to the accused. And where a correct charge is given, it affords no ground of attack upon the charge itself that the court failed to give, in connection therewith, some other principle or proposition of law. *Cline* v. *Milledgeville Banking·Co.,* 131 *Ga.* 611 (62 S. E. 984) ; *Seaboard Air-Line Ry.* v. *Randolph,* 136 *Ga.* 505 (71 S. E. 887).

We might add, however, that there is no merit in the criticism. It was not error to fail to state the penalty, or to fail "to specify the grade of involuntary manslaughter referred to in said charge." *Jordan* v. *State,* 143 *Ga.* 499 (85 S. E. 327) ; *Tillman* v. *State,* 136 *Ga.* 59 (70 S. E. 876). What further specification of the grade was required, if the court correctly charged the law as to both grades of involuntary manslaughter committed in the commission of an unlawful act? And the criticism does not take exception to the failure of the court to charge upon involuntary manslaughter in the commission of a lawful act, which probably might produce such a consequence, in an unlawful manner.

· 7. The ruling made in the 7th headnote requires no elaboration.

8. The court did not err in refusing a new trial upon the grounds of the motion based upon alleged newly ·discovered evidence. As to a part of this evidence the court might well have found that the movant had not shown a proper degree of diligence; and as to the other evidence claimed to be newly discovered, it is merely impeaching.

The grounds of the motion not specifically referred to are without merit.     *Judgment affirmed.     All the Justices concur.*