20568. HINES *v.* THE STATE.

ARGUED SEPTEMBER 14, 1959—DECIDED OCTOBER 14, 1959.

*Robert E. Barker,* for plaintiff in error.

*Andrew J. Ryan, Jr., Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.

ALMAND, Justice. Under an indictment charging him with the murder of Betty Flatham Thompson by strangling and choking her to death, Charles F. Hines, Jr., was on his trial found guilty without a recommendation of mercy, and was sentenced to death by electrocution. His motion for a new trial on the general and amended grounds was denied. To the order denying a new trial his writ of error is here for review.

■ The first ground of the amended motion assigns error on the admission in evidence, over the objection that the witness was not an expert, of the opinion of Special Investigator Hallman, a witness for the State, that he found on the buttocks of the deceased fecal matter "intermingled and intermixed with and partly covered in some instances by a very thick fluid having the appearance of human semen or spermatozoid." There is no merit to this assignment of error. The witness had testified that he was a graduate of the Federal Bureau of Investigation School, and that a part of his school work included the matters on which he gave his opinion.

■ Ground 2 complains of the following charge: "I charge you that, if you find that the defendant set out to commit sodomy upon the deceased, and that during the commission of the act of sodomy (if the defendant did commit sodomy upon the deceased), the defendant killed the deceased in the manner set forth in the indictment, and if you find any such killing was the natural, reasonable and probable consequence of such act of sodomy, then I instruct you that under such circumstances

you would be authorized to convict the defendant of the offense of murder."

The complaint that the charge was misleading and led the jury to believe that, if the defendant was guilty of attempted sodomy under the facts, they would be authorized to convict the defendant, is without merit. The charge as given related only to the act of sodomy and not to an attempt.

■ Ground 3 assigns error on the giving in charge to the jury the statutory definition of the crime of sodomy, and further assigns error on that part of the charge set out in ground 2, on the ground that the evidence did not substantiate the charge. There were sufficient evidence and circumstances to warrant the conclusion that the death of the victim occurred while the defendant was in the act of committing sodomy per anus upon the deceased or as a result of such act.

■ Ground 5 complains that the court erred in charging the provisions of Code § 26-1009 relating to involuntary manslaughter. The complaint is that the court should have elaborated as to when a homicide is committed without intent in the commission of an unlawful act, and that the court misled the jury to believe that, if death resulted from the commission of any unlawful act, whether a felony or misdemeanor, it would authorize a verdict finding the defendant guilty of murder. The charge as given was a correct statement of the law. If any further elaboration was desired, it should have been requested.

■ Ground 6 asserts that the court erred in omitting to give the jury the form of verdict they could return if they found the defendant guilty of involuntary manslaughter while in the commission of a wrongful act. Inasmuch as the jury returned a verdict finding the defendant guilty of murder, the failure to instruct them as to the form of verdict if they found him guilty of involuntary manslaughter, was not error. *Hicks* v. *State*, 146 *Ga.* 221 (7) (91 S. E. 57).

■ On implied malice the court charged as follows: "Malice may be implied, says the law, where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. An abandoned and malignant heart in the sense of the law is commonly held to be

evinced by a weapon likely to produce death and by a brutal and bloodthirsty use of the same. Whether or not given instrument is a weapon likely to produce death when used in the manner in which it was used is in every instance a question for the jury to be determined by you."

Ground 7 avers that the court failed to instruct the jury that the weapon used was not a deadly weapon per se and the unintentional homicide resulting from the use thereof would be one of two phases of involuntary manslaughter or the intentional use resulting in death would be voluntary manslaughter. No complaint is made as to the charge as given. If additional instructions were desired, they should have been requested.

■ Ground 8 asserts that the court erred in failing to charge the law of voluntary manslaughter. Neither the evidence nor the statement of the defendant required a charge on this phase of the law.

Grounds 4 and 9 of the amended motion have been expressly abandoned.

■ On the general grounds, counsel for the defendant strenuously insists that the evidence was wholly insufficient to sustain the verdict. In brief, the jury had the following evidence before them. On September 29, 1958, at about 12 noon the defendant and Betty Thompson were seen together drinking in a bar. Shortly thereafter they registered and went to a room in a hotel. A maid in the hotel heard a woman scream in the room occupied by the two. She went to the door and asked them what was the trouble. The man said "ain't nothing, everything's O. K." Upon hearing further screams from the woman, she went to the door and heard the woman remark, "If you were my husband, you wouldn't do me like this." The maid further testified that the woman's screams were so pitiful that she went to get help. When she came back she saw the defendant leave the room. The maid and the hotel manager went into the room and found Betty Thompson on the bed "lying over on her side" dead. Officer Hallman testified that he found two pillow cases which were knotted together and a towel near the bed. The knot in the pillow cases was moist. The towel was twisted into a very tight "rope-like appearance."

The officer found fecal matter intermingled with a thick fluid "having the appearance of human semen or spermatozoid." The Senior Toxicologist in charge of the Chatham County Branch of the State Crime Laboratory positively identified the fluid as being semen and spermatozoid. The doctor who performed the autopsy gave in his opinion that death was caused from strangulation or choking. He found bruises on her face; an indentation over the bridge of her nose; a scar below the lip and just above the chin "as if there had been some pressure here"; and some bruises along both of the eyes. Officer Hallman testified that, after he completed his investigation, he went to the defendant and told him that the information he had obtained from the autopsy indicated that Betty Thompson had been strangled to death in the course of a sodomy intercourse, and "I asked him if that was not true." The defendant replied: "Yes, that's true, but I'm hazy on details; I don't remember what happened." The defendant in his statement said he was an alcoholic; that he vaguely remembered talking to a woman in a bar; that he was drunk; and that he had no recollection of what happened thereafter.

This evidence was sufficient for the jury to find that the deceased met her death at the hands of the defendant while he was in the prosecution of a crime punishable by confinement in the penitentiary and, under the provisions of Code § 26-1009, was sufficient to support a verdict of guilty of murder.

There was no error in denying the motion for new trial.

*Judgment affirmed. All the Justices concur.*