41290. BENNETT v. THE STATE.

(326 SE2d 438)

</div>

BELL, Justice.

Bennett was convicted of the murder of Joseph Hulsey, and received a life sentence. His motion for new trial was denied, and he appeals.[1] We affirm.

Bennett and Hulsey had known each other for about ten years before the homicide. At trial Bennett testified that he and Hulsey had an argument about one week before the shooting during which Hulsey pulled a knife on him. Bennett said that the *reason* for the argument was that Hulsey had committed several burglaries, but was attributing them to him. According to Bennett, Hulsey continued to attribute these burglaries to him, which prompted him to telephone Hulsey at about 10:30 p.m. on July 29, 1983 at the apartment of Tammy King, a girl whom Hulsey dated and Bennett had dated. Bennett said that

---

[1] The crime was committed on July 30, 1983. The Polk County jury returned its verdict of guilty on October 10, 1983. A motion for new trial was filed on November 8, 1983. An amended motion for new trial was filed on May 7, 1984. The transcript of evidence was filed on February 27, 1984. The motion for new trial was denied on May 7, 1984. Notice of appeal to the Court of Appeals was filed on May 16, 1984. The record was docketed in the Court of Appeals on June 14, 1984. The Court of Appeals transferred the appeal to this court on June 14, 1984, and the record was docketed here on June 27, 1984. It was argued before this court on September 17, 1984.

Hulsey suggested they meet and settle their differences. Shortly thereafter, Hulsey called the Rockmart police and spoke with Officer Larry Ruff, telling him that someone had threatened to kill him.

After his conversation with Hulsey, Bennett obtained a shotgun from his grandmother's house and at about midnight drove to the apartment complex where he lived with his cousin, Alethia Smith. Tammy King also lived there, and Hulsey frequently spent the night with her. As Bennett drove into the parking lot, Hulsey drove in behind him and parked, according to Bennett, about 20 feet away, saying "I've got you now." Bennett said that Hulsey started to get out of his car with a knife in his hand. At that point, according to Bennett, he fired a shot over Hulsey's head to scare him, and then went to Smith's apartment. Smith testified that when Bennett came in that night, he told her he had shot Hulsey. Danny Dunn, a friend of Bennett's who was at Smith's apartment that night, testified that Bennett said he peppered the side of Hulsey's car. According to Bennett, he broke the gun down into three pieces at Smith's apartment.

An investigating officer found Hulsey slumped over the steering wheel of his car. Both doors of the car were shut. A knife was found in Hulsey's right hand. Bennett was arrested at a nearby convenience store, and a shotgun, broken down into three pieces, was found on the front seat of his car.

Hulsey died of a gunshot wound to the brain. Four buckshot pellets struck Hulsey's car, and forensic evidence established that the fatal shot had to have been fired from between 30 to 50 feet from the passenger side of the car.

1. In his first five enumerations of error Bennett argues that the evidence is insufficient to support his conviction. We disagree and conclude that viewing the evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found Bennett guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his sixth enumeration of error Bennett argues that the trial court erred in refusing to give his requested charge on felony grade-manslaughter. OCGA § 16-5-3 (a). We disagree.

OCGA § 16-5-3 (a) provides: "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." Initially, we note that there is no evidence that the shotgun discharged accidentally; in fact, Bennett admits that he fired the shotgun in the direction of Hulsey in order to scare him. "Using a deadly weapon to commit an act which places another in reasonable apprehension of immediately receiving a violent injury amounts to an aggravated assault, absent justification. Code Ann. §§ 26-1301, 26-1302, 26-901

[now OCGA §§ 16-5-20, 16-5-21, 16-3-20]." *Williams v. State*, 249 Ga. 6 (4) (287 SE2d 31) (1982). In this case the shooting was either justified as an act of self-defense, or constituted a felony, and the trial court therefore correctly refused to give Bennett's requested charge on felony grade-involuntary manslaughter. *Williams v. State*, supra, 249 Ga. at 8; *Washington v. State*, 249 Ga. 728 (2) (292 SE2d 836) (1982); *Richardson v. State*, 250 Ga. 506 (3) (299 SE2d 715) (1983); *Ward v. State*, 252 Ga. 85 (1) (311 SE2d 449) (1984).

3. a. In his eighth enumeration of error Bennett contends that the trial court erred in not allowing the defense to introduce evidence of Hulsey's violent nature and criminal history.

Generally, the reputation or character of a murder victim for violence is irrelevant and inadmissible in criminal proceedings. OCGA § 24-3-2; *Henderson v. State*, 234 Ga. 827 (1) (218 SE2d 612) (1975). However, when relying on the defense of justification in a homicide case the accused may offer evidence of the violent character of the deceased victim if he makes a prima facie showing that the victim was the aggressor and was assailing the defendant, and that the defendant was honestly seeking to defend himself. *Maynor v. State*, 241 Ga. 315, 316 (245 SE2d 268) (1978); *Milton v. State*, 245 Ga. 20, 22 (262 SE2d 789) (1980); *Respress v. State*, 249 Ga. 731 (4) (293 SE2d 319) (1982). Once the defendant makes a prima facie case for justification, he may offer evidence of the victim's general reputation for violence, including the victim's general reputation for a specific type of violence, such as for shooting people. *Henderson v. State*, supra, 234 Ga. at 828-829; *Milton v. State*, supra, 245 Ga. at 22; *Cooper v. State*, 249 Ga. 58 (2) (287 SE2d 212) (1982). Such evidence is admissible to corroborate the defendant's testimony that the victim was violent on the occasion in question and to show the defendant's state of mind (reasonable fear) at the time of the incident in question. *Henderson v. State*, supra, 234 Ga. at 830.

Moreover, although the defendant may not prove the victim's general reputation for violence by specific acts of violence, *Music v. State*, 244 Ga. 832 (1) (262 SE2d 128) (1979); *Harrison v. State*, 251 Ga. 837 (3) (310 SE2d 506) (1984), if the defendant makes out a prima facie case for justification, he may offer evidence of "prior specific assaults by the deceased upon the defendant to illustrate his contention that he reasonably believed he had to use deadly force to defend himself." *Milton v. State*, supra, 245 Ga. at 22. Accord *Respress v. State*, supra, 249 Ga. at 733.

In the instant case Bennett argues that the trial court erred in excluding evidence of several prior convictions of Hulsey, none of which involved Bennett. We disagree. To begin, we seriously doubt that Bennett made out a prima facie case of self-defense. Moreover, even if he had, the court did not err in excluding Hulsey's prior con-

victions, as evidence of a victim's specific acts against third parties is inadmissible. *Harrison v. State*, supra, 251 Ga. at 838; *Respress v. State*, supra, 249 Ga. at 733.

Bennett also argues that the court should have permitted defense counsel to question a police officer as to Hulsey's general reputation for violence. Again, it is doubtful whether Bennett satisfied the criteria for the introduction of such evidence. In addition, we find that if any error occurred, it was harmless, as ample other testimony bearing on Hulsey's general reputation for violence and specific incidents of violence was admitted. Several witnesses, including two police officers, testified that Hulsey had a reputation for violence by assault with a knife, and Bennett testified that Hulsey pulled a knife on him during an argument they had about one week before the shooting. Considering the admission of this evidence, it is highly probable that the exclusion of one police officer's testimony as to Hulsey's reputation for violence did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

b. In a related enumeration of error, his seventh, Bennett argues that the trial court erred in failing to give certain requested charges. These charges concerned the purposes for which the jury could consider the evidence of Hulsey's reputation for violence and his prior instances of violence toward Bennett. Pretermitting the question of whether it is error for a trial court to refuse to give a requested charge on such a collateral matter, but see *Burger v. State*, 245 Ga. 458 (1) (265 SE2d 796) (1980); *Tillman v. State*, 136 Ga. 59 (1) (70 SE 876) (1911), we find that if the failure to give the charges was error, it was nevertheless harmless, *Johnson v. State*, supra, 238 Ga. 59. The trial court's charge fairly presented to the jury the substantial issue of justification, to which the evidence of Hulsey's character was relevant, and defense counsel had the opportunity during closing to argue how that evidence related to Bennett's claim that he reasonably believed the use of force was necessary to defend himself. This factor, combined with the considerable strength of the evidence supporting the verdict, makes it highly probable that if any error occurred it did not contribute to the verdict. *Johnson v. State*, supra, 238 Ga. 59; *Hill v. State*, 246 Ga. 402 (VI) (271 SE2d 802) (1980).

4. In his ninth enumeration of error Bennett argues that the trial court improperly allowed the prosecutor to cross-examine him, over his objection, concerning his post-arrest silence.

In *Doyle v. Ohio*, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976), the Supreme Court held that since *Miranda* warnings may induce a defendant's post-arrest silence by implicitly assuring him that his silence would not be used against him, it would be fundamentally unfair and a violation of due process to allow the defendant's silence to be used to impeach him at trial. Accord *Hill v. State*, 250 Ga. 277 (4)

(295 SE2d 518) (1982); *Durden v. State,* 250 Ga. 325 (3) (297 SE2d 237) (1982). However, the Supreme Court has held *Doyle* inapplicable to cases in which the defendant has not received any *Miranda* warnings. *Fletcher v. Weir,* 455 U. S. 603 (102 SC 1309, 71 LE2d 490) (1982). Reasoning that if no *Miranda* warnings are given the defendant's post-arrest silence could not be said to be induced by the government, the court found no fundamental unfairness in permitting the state to use the defendant's post-arrest silence to impeach his claim at trial of self-defense. *Fletcher v. Weir,* supra, 455 U. S. at 606-607.

Here, the state clearly used Bennett's post-arrest silence to impeach his testimony that he acted in self-defense, but the record does not indicate whether Bennett received any *Miranda* warnings. Thus, we cannot determine from the record before us whether the silence used by the state to impeach Bennett occurred before or after *Miranda* warnings were given. In this regard, at least one court has held that, when a defendant objects to a prosecutor's cross-examination with respect to his post-arrest silence, the state has the burden "to establish that *Miranda* warnings were not given prior to the silence relied on for impeachment purposes." *United States v. Cummiskey,* 728 F2d 200 (5) (3rd Cir. 1984). But see *State v. McGinnis,* 320 SE2d 297 (4-5) (1984) (placing the burden on the defendant). Bennett argues that, since the state did not, upon his objection to the use of his post-arrest silence, demonstrate that the silence used occurred before he was given *Miranda* warnings, we should reverse his conviction. We find, however, that we need not decide the issue of whether the state or the defendant has the burden of establishing that *Miranda* warnings were or were not given. Here, assuming that Bennett was given *Miranda* warnings immediately upon his arrest, we find that, considering the strength of the evidence against Bennett, any error in the use of his post-arrest silence for impeachment purposes was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U. S. 18, 23-24 (87 SC 824, 17 LE2d 705) (1967); *Hill v. State,* 250 Ga. 277 (4) (b) (295 SE2d 518) (1982); *Wilson v. Zant,* 249 Ga. 373 (1) (290 SE2d 442) (1982).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 19, 1985 —
REHEARING DENIED MARCH 28, 1985.

*York, Cummings & McRae, Michael H. York,* for appellant.
*William A. Foster III, District Attorney, Donald N. Wilson, Assistant District Attorney, Michael J. Bowers, Attorney General, Ed-*

*die Snelling, Jr.,* for appellee.