51998. ANDERSON v. THE STATE.

CLARK, Judge.

Defendant was charged with the murder of her husband and was convicted of the lesser offense of voluntary manslaughter. She appeals. *Held:*

1. Defendant contends that the trial court erroneously restricted testimony concerning the deceased's prior acts of violence toward the accused.

"Previous difficulties between the defendant and the deceased, which give color and effect to the transaction under investigation and shed light upon the motives of the parties, are competent evidence. [Cits.] To be admissible, however, it must further be shown that the previous occasion is close enough in point of time, and otherwise relevant to the feelings of the parties, to be of probative value or it is not admissible. [Cits.]" *Mitchell v. State,* 134 Ga. App. 376, 378 (214 SE2d 593). "If the prior transactions are too remote in either time or content, the court may allow the examination to be curtailed. [Cits.]" *Haynes v. State,* 134 Ga. App. 588 (215 SE2d 342).

From our examination of the record, we conclude that the evidentiary rulings of the court were in accordance with the above-stated rule. The trial judge liberally allowed testimony from several witnesses which showed previous hostility and acts of violence directed toward the defendant by her deceased husband. The court

did not err in omitting testimony of this nature in those instances where the transactions occurred several years prior to the act in question or where the occurrences had little, if any, relevancy to the issues presented.

2. In proving that defendant possessed the requisite criminal intent, the state presented testimony by the arresting officer that the accused was not crying shortly after her husband had been stabbed. This witness also testified that when the ambulance arrived to transport defendant's seriously wounded spouse to the hospital, she stated that she did not care what happened to him. This testimony was in accordance with those decisions holding that such lack of concern may be relevant to the accused's motives and intent. See *Allanson v. State,* 235 Ga. 584, 587 (4) (221 SE2d 3).

In an attempt to rebut this damaging testimony and also to further its claim that the accused lacked criminal intent, the defense tendered proof of the defendant's reaction to learning of her husband's death a few hours after the stabbing incident. The testimony of Officer Bell was offered outside the presence of the jury. He stated that defendant had inquired of her husband's condition. When she was told of his death, she screamed out, "Oh, my God, I didn't mean that, I wouldn't have had that to happen for anything in the world." The witness stated that defendant then broke into tears.

The trial court refused to permit the proffered testimony. Defendant contends that the exclusion of this evidence was harmful error necessitating a new trial.

The trial judge correctly refused to permit to be introduced in evidence the defendant's outcry. The foregoing occurred approximately two hours after the stabbing incident. At the time, the defendant was at the Atlanta Police Headquarters in the company of two of her attorneys. The incident is too far removed in both time and place to come under the res gestae rule. See *Everett v. State,* 62 Ga. 65 (1); *Hudson v. State,* 153 Ga. 695, 700 (8) (113 SE 519). It was also self-serving and did not rebut the testimony of the officers describing her physical appearance and demeanor when they arrived at the scene shortly after the incident took place. The proffered utterance states that the defendant *didn't mean to kill her*

*husband.* Moreover, the defendant was able to have certain res gestae exclamations admitted in evidence which were far more beneficial. Her father testified that he heard the defendant state, "Leave me alone, leave me alone, leave me alone. Stop beating me." It got quiet and the next thing he knew, the defendant came into his room and said, "Daddy, I stabbed Quincy. I didn't mean to do it" (T. 154), after which, the defendant called an ambulance. The defendant's father also testified that, in response to his question as to how it happened, the defendant said, "Daddy, I didn't know I had stabbed him. I didn't mean to do it. But I thought he was trying to kill me." (T. 170). In her own testimony, the defendant told of a conversation with her father in which she said, "You know, I didn't mean to do it." (T. 260). The evidence showed multiple stab wounds inflicted on the body of the deceased, three of which could have been sufficient to cause death. The defendant admitted the stabbing. While she entered a general plea of not guilty, her real defense was justifiable homicide — self-defense. The jury had ample evidence to authorize an acquittal. It weighed the evidence and found the defendant guilty of voluntary manslaughter — the killing of another human being, under circumstances which would otherwise be murder, where the act is solely the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. Code Ann. § 26-1102. There is ample evidence in the record to affirm the conviction.

3. Defendant's third enumeration contends that the trial court erred in refusing certain requested charges pertaining to self-defense. The record shows, however, that the court gave full and correct instructions on this matter. "Where the charge given substantially covers the applicable principles, failure to give requested instructions in the exact language requested is not error. [Cits.]" *Leutner v. State,* 235 Ga. 77, 81 (218 SE2d 820). This enumeration is without merit.

4. Defendant contends that the trial court erred in allowing the jury to be dispersed during their deliberations over defense objections. Defendant's argument is based upon Code Ann. § 59-718.1, which

provides: "At any time during the trial of a civil or criminal case, either before or during jury deliberation, the judge may, in his discretion, allow the jury to be separated and the members thereof dispersed under appropriate instructions, *except in capital cases.*" (Emphasis supplied.)

Despite the fact that the state did not seek the death penalty, it is argued that this case is a capital one within the meaning of the above Code section. This contention was rejected by our Supreme Court in *Jordan v. State,* 235 Ga. 732, 735 (3) (222 SE2d 23), and is, accordingly, without merit.

5. Defendant's remaining enumeration contends that the court's charge as to the presumption of an intent to kill arising from the use of a deadly weapon was burden-shifting. It has been held, however, that this instruction is not erroneous where, as here, the state's evidence shows no circumstances of mitigation or justification. *Jones v. State,* 234 Ga. 108, 110 (1) (214 SE2d 544); *Jarrell v. State,* 234 Ga. 410, 422 (9) (216 SE2d 258). The instruction given here was adjusted to the evidence and was not burden-shifting within the context of the charge as a whole.

*Judgment affirmed. Bell, C. J., and Stolz, J., concur.*

SUBMITTED APRIL 5, 1976 — DECIDED MAY 12, 1976 — REHEARING DENIED JUNE 10, 1976 —

*Garland, Nuckolls & Kadish, Edward T. M. Garland, John A. Nuckolls, Cliffe Lane Gort, Arrington & Rubin, Marvin S. Arrington, S. Richard Rubin,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Jack Mallard, Assistant District Attorneys,* for appellee.