65417. MURFF v. THE STATE.

QUILLIAN, Presiding Judge.
The defendant, Gerald Murff, appeals his conviction of voluntary manslaughter. The witnesses to this encounter are not in agreement as to all of the facts, but in essence, Dessa Brown testified

that she and her brother, Hiram Walker, went to the Church's Fried Chicken restaurant on Martin Luther King Avenue across the street from the MARTA Hightower station. Walker was going to return to his home in Alabama when they left the restaurant, so they went in separate cars. Walker arrived two or three minutes after she did. She saw her brother attempt to enter the parking lot but was confronted by a car attempting to exit the parking lot. Neither would give the right of way to the other. Both drivers opened the door of their car and discussed the situation. She saw something in the other man's hand. Then she saw her brother reach into his car and pick up a rifle. She was afraid of weapons and ran into the restaurant's bathroom. She heard shots. After the firing stopped she went back into the restaurant and heard the defendant say that the man in the Cadillac (her brother) was dead.

Two employees of Church's heard shots and saw a man standing by a car (Walker) with a rifle. They saw him shoot toward the rear of the parking lot a few times and then turn and fire in the opposite direction (toward the defendant) a few times. More shots were heard and Walker was lying by his car with his rifle lying by his side.

The defendant, Murff, is an ex-GBI agent, and was once an Atlanta policeman and a Fulton County deputy sheriff. He now works as a private investigator and contracted with Church's Fried Chicken to pick up their cash on weekends and deposit it in the bank. He has, in his car, a .45 caliber pistol, a "Ruger Mini - 14 carbine" and a Browning shotgun. He had made three pickups at other Church's locations that evening and drove into the parking lot of Church's on MLK Avenue when he saw a man with a rifle pointed toward the rear of Church's. The man started shooting and he saw several people running. He "challenged" the man, by saying "police, halt, or police freeze." The man turned toward him and fired. Murff testified that he drew his pistol and fired it as rapidly as he could at a distance of approximately 12 feet. He jumped back into his car "for safety" and saw — over the rear seat of his car — through the back windshield, that the man was still standing and pointing the rifle. He picked up his carbine and put it out the door and fired it at the man. "I continued to fire until he fell."

Willie Howard, an electronics engineer for MARTA, testified he had just left his job and arrived at the MARTA Hightower station. It was approximately 12:30 a. m. As he was walking across the parking lot to look for the person who was to pick him up — he heard shots. He "crouched" down and ran for the nearest tree. "I heard the shots, I looked over here and I saw . . . The victim was slumped over on the car door. Next thing I saw, this was the gentleman's car right here [the defendant], the phone booth right here. His car door was open right

here and he had his back to the car door shooting back to this gentleman [the defendant] right here, and the first observation was the automatic pistol that he had. He was in a crouched position shooting with it, and the next thing I know he took that gun and put it back. I think he laid it in the front seat of the car and reached back in the back seat of the car and got an automatic rifle, which looks to me like an M-16 automatic rifle . . . after he shot the guy with the handgun, he proceeded shooting with that automatic rifle and emptied that automatic rifle in the car, the guy's body . . . and he took that gun after he had emptied that gun, he took another magazine and loaded that gun back again . . ." Howard said that he waited until the police arrived and he then went across the street. He heard Murff tell the police officer: "I am a Fulton County police officer. I am off duty. I don't have any identification . . . he was telling him that there was two guys had gotten into a confrontation there, verbal altercation there in the parking lot and they drew a gun and started firing at each other, and he told the police officer that he challenged the guys. . . and told him to halt, I'm a police officer and said the guy shot at him and he in turn shot at him . . . I shot him first with my handgun and said my handgun jammed and then I had another rifle in the car. And I shot him with the rifle . . ."

Murff's story coincided in part with this version of the events. Murff admitted that he first fired at the deceased with his .45 caliber automatic pistol and then used his carbine and removed the clip and inserted a new clip. Murff said each of his clips held 28 rounds.

A police officer testified that the Hightower MARTA lot was so much lower than Church's that you would not be able to see anything happening at Church's from the MARTA parking lot. An employee of Church's stated that although she did not know Howard, she was familiar with his face as a customer. He had been in Church's that evening before this incident began. "I saw him standing by the door as if he was waiting on someone, and when I looked up again he was gone." Howard denied that he had left his MARTA job early that evening.

The jury found defendant guilty of voluntary manslaughter. Murff brings this appeal. *Held:*

1. Defendant enumerates as error the trial court's denial of his plea of double jeopardy. We find no error. Defendant was previously tried in January of 1982. Counsel's motion states that "[a]fter the jury had deliberated less than eight hours, the Court, sua sponte discharged the jury after declaring a mistrial." The record was not further developed as to the circumstances surrounding the mistrial. Our Constitution provides that "[n]o person shall be put in jeopardy of life or liberty more than once for the same offense, save on his, or

her own motion for a new trial after conviction, *or in case of mistrial.*" (Emphasis supplied.) Art. I, Sec. I, Par. XV (Code Ann. § 2-115).

The U. S. Supreme Court has stated that where a judge abuses his discretion in discharging the jury, without manifest necessity for the sua sponte declaration for a mistrial, a second prosecution is barred. United States v. Jorn, 400 U.S. 470, 487 (91 SC 547, 27 LE2d 543). ". . . [T]his Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether 'there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.'" United States v. Dinitz, 424 U.S. 600, 606 (96 SC 1075, 47 LE2d 267). "Manifest necessity" is usually used in the context of prosecutorial or judicial overreaching during a trial. See United States v. Tateo, 377 U. S. 463 (84 SC 1587, 12 LE2d 448). "A trial may be discontinued when particular circumstances manifest a necessity for so doing and when failure to discontinue would defeat the ends of justice." Wade v. Hunter, 336 U.S. 684 (69 SC 834, 93 LE 974). When this may be done without barring another trial depends upon "all the circumstances of the particular case and not upon the mechanical application of an abstract formula." Id.

In *Phillips v. State,* 238 Ga. 632, 633 (235 SE2d 12), a trial in which defendant entered a plea of double jeopardy because the trial court in the first trial declared a mistrial over defense objection, the Court found that "[a] retrial after a mistrial caused by the failure of the jury to reach a verdict does not constitute double jeopardy under the doctrine of 'manifest necessity' as enunciated in United States v. Perez, 22 U. S. (9 Wheat.) 579." The fact that a jury has deliberated a sufficient length of time without reaching a verdict can be "manifest necessity" requiring a mistrial. *Orvis v. State,* 237 Ga. 6 (2) (226 SE2d 570); see also *Harwell v. State,* 230 Ga. 480 (2) (197 SE2d 708).

In *Phillips,* supra, the jury had deliberated only two hours and fifteen minutes. The court held that "[t]he decisive factor is not the length of deliberation but the inability of the jury to agree on a verdict." *Phillips v. State,* 238 Ga. 632, 634, supra. Thus, inasmuch as it is within the sound discretion of the trial court to declare a mistrial because of an inability of a jury to reach a verdict, we find no merit to a claim of error based solely on jury deliberations lasting approximately eight hours, and also find that such mistrial was based on "manifest necessity." *Phillips v. State,* 238 Ga. 632, 633, supra; *Hooks v. State,* 138 Ga. App. 539 (2) (226 SE2d 765); *Van Scoik v. State,* 139 Ga. App. 293 (228 SE2d 229); *Kelly v. State,* 145 Ga. App. 780 (1) (245 SE2d 20).

2. Denial of defendant's motion for an immediate appeal from

the trial court's denial of its motion to dismiss on the grounds of double jeopardy is enumerated as error. Defendant argues that the denial of his plea of double jeopardy is such a ruling as permits a direct appeal under Abney v. United States, 431 U. S. 651 (97 SC 2034, 52 LE2d 651). We agree. Our Supreme Court, in *Patterson v. State,* 248 Ga. 875, 877 (287 SE2d 7) found that although Abney was construing a federal statute, 28 USC 1291, they reached "the same conclusion under Code Ann. § 6-701, where the plea was filed sufficiently in advance of trial so as not to constitute a delaying device." In the instant case, the plea of double jeopardy was filed on the day of trial. We need not reach the issue of whether this was a "delaying device" for defendant must show harm as well as error to require reversal and as his plea of double jeopardy is without merit — so is this enumeration.

3. The indictment sufficiently charged the offense of voluntary manslaughter.

4. The trial court did not err in denying defendant's motion for a directed verdict of acquittal. "Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal" the court may direct such verdict. Code Ann. § 27-1802 (Ga. L. 1971, pp. 460, 461). The defendant claims to have acted in self-defense after the victim fired at him. "Self-defense, as its nomenclature implies — is defensive in nature and not offensive. Therefore, it is invoked by necessity and without necessity being present it is inapplicable. Thus, the amount of force which can be utilized is based upon necessity and under no circumstances may legitimate self-defense exceed the bounds necessary for its use." *Spradlin v. State,* 151 Ga. App. 585, 586 (260 SE2d 517); see also *Deal v. State,* 145 Ga. 33, 36 (88 SE 573). There was a conflict in the evidence. There was a point in time in which the danger posed by the deceased had passed. That point in time was in dispute. From the testimony of Willie Howard the jury could have found that the danger posed by the victim was over quite early in the encounter. The testimony of the medical examiner showed multiple gunshot wounds with three wounds to the chest as the principal cause of death. The doctor recovered "two large caliber jacketed bullets" from the body. The defendant fired at the victim from a range of approximately 12 feet with his .45 caliber pistol. Other wounds were to the hip, arm, shoulder and several on the hand and fingers. Pictures of the corpse reveal a body with numerous bullet wounds.

The testimony of Detective Agan and the deputy city solicitor as to what Murff told them could also have raised an issue as to whether the final series of shots by the defendant were necessary. Credibility

of the witnesses and the weight to be accorded their testimony is the sole province of the jury. We do not find the evidence demanded a verdict of acquittal. *Wallin v. State,* 248 Ga. 29 (3) (279 SE2d 687). Accordingly, denial of the motion was not error. Further, "[w]hen viewed in the light favorable to the verdict this evidence is sufficient to enable any rational trier of facts to find the existence of the offense [charged] beyond a reasonable doubt." *Rutledge v. State,* 245 Ga. 768, 769 (267 SE2d 199); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

5. In the opening statement to the jury the assistant district attorney said that the evidence would show that "the Defendant was on suspension from his job as a Deputy Sheriff for Fulton County." The defendant objected and moved for a mistrial — arguing that the state had put his character in issue. The trial court overruled the objection — pointing out that during this incident the defendant had shouted "police, halt" or "police, freeze," and that this evidence would show that he was not a police officer. We find no error.

6. The defense offered in evidence the testimony of a forensic psychologist as to the testimony of Willie Howard. Counsel stated that the psychologist had access to the transcript of testimony of Howard at the previous trial and the preliminary hearing and had discovered "discrepancies in the transcript and that he can state what some of these discrepancies were and his reasons therefor. He cannot give a definite opinion as to why Mr. Howard has done certain things, but he can give certain opinions." This testimony addressed the credibility of the witness Howard. *Bentley v. State,* 131 Ga. App. 425 (4) (205 SE2d 904). "The credibility of a witness is a matter to be determined by the jury under instructions from the court." Code Ann. § 38-1805 (Code § 38-1805). Any question as to credibility of a witness is for the jury to resolve. *Rivers v. State,* 147 Ga. App. 19 (2) (248 SE2d 31).

In *Smith v. State,* 247 Ga. 612, 619 (277 SE2d 678), a case in which the defense offered the testimony of a clinical psychologist as to effect of the "battered woman's syndrome" on the accused, the Supreme Court held: "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." In the instant case, assuming there were discrepancies in the testimony of the witness, under the statute (Code Ann. § 38-1805) and prior decisional law, this issue was for the jury. It was not beyond the ability of the jurors to draw such conclusion. The trial court did not err in excluding the testimony of the psychologist.

7. We have examined the remaining enumerations of error and found them to be without merit.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 17, 1983 —
REHEARING DENIED MARCH 17, 1983 —

*William Lewis Spearman,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert III, Wendy Shoob, Assistant District Attorneys,* for appellee.