## 39845. MURFF v. THE STATE.

SMITH, Justice.

Gerald Mitchell Murff was indicted for voluntary manslaughter, tried before a Fulton County jury, convicted, and sentenced to five years imprisonment. On appeal his conviction was affirmed. *Murff v. State,* 165 Ga. App. 808 (302 SE2d 697) (1983). We granted certiorari and now reverse.

Murff, formerly an Atlanta policeman and GBI agent, now works for a privately owned security company. On the night of August 29, 1981, Murff was employed by Church's Fried Chicken in Atlanta to pick up cash receipts from various Church's restaurants and deliver the money to a bank. At approximately 1:00 a.m. on the 29th, Murff had made three such pick-ups and was transporting approximately $20,000 cash in his car when he drove to a Church's restaurant on Martin Luther King Drive. As he entered the Church's parking lot, Murff noticed the victim, Hiram Walker, standing beside a parked car holding a high-powered hunting rifle. Walker was firing the rifle toward the rear of the crowded parking lot. Murff got out of his car and shouted "police, freeze" at Walker. Walker turned toward Murff and, according to Murff and two Church's employees who witnessed the incident, shot at him. Murff drew a .45 caliber pistol and fired rapidly from a distance of about twelve feet. He then dove back into his car for safety. Lying in the floorboard, Murff reached into the back seat for a Ruger Mini-14 automatic carbine he kept there. Noting that Walker was still standing and pointing his rifle toward him, Murff aimed at Walker through the open car door and

fired until Walker fell to the ground. Walker died from multiple gunshot wounds. Murff asked the manager of Church's to call an ambulance and police. He remained at the scene of the shooting until police arrived.

At trial, testimony revealed that immediately prior to Murff's arrival that evening, the victim and an unidentified third person had been engaged in a heated argument over who had the right-of-way to the entrance road to Church's parking lot. The verbal exchange between Walker and the other, unidentified man escalated into a gunfight. Witnesses inside the Church's store saw Walker inexplicably fire his rifle several times into the crowded parking lot at the rear of the restaurant. He then turned and fired on Murff. At some point during the melee, the unidentified man drove away. He was never apprehended by police.

One witness offered a slightly different version of the events of that night. Willie Howard testified that he witnessed the shooting from the MARTA Hightower station parking lot across the street from Church's. He said that he heard gunshots, saw the victim slumped over his car door, and observed Murff shoot the victim many times, first with a pistol and then with a carbine.

Murff took the stand in his own defense and testified that he did not see Walker arguing with anyone that night when he arrived at the parking lot; that he observed Walker firing his rifle randomly into the crowded parking lot; that upon hearing his warning Walker turned and fired at least once at him; that given the circumstances he assumed that Walker was involved in a robbery attempt; and that he was throughout the episode afraid for his life and the lives of others in the parking lot and Church's restaurant. Prior to this incident, Murff had never met Walker, who was visiting Atlanta from out of state at the time of the shooting.

In our view the evidence does not support a conviction of voluntary manslaughter. OCGA § 16-5-2 (a) (Code Ann. § 26-1102) provides: "A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder." Thus in order for an intentional killing to be reduced in severity from murder to voluntary manslaughter, the evidence must support a finding of provocation, passion and lack of

cooling-off time. See Kurtz, Criminal Offenses in Georgia 156 (1980).

The missing element in this case is passion. The "sudden, violent, and irresistible passion" contemplated by the statute ordinarily refers to anger or rage so intense "as to exclude all idea of deliberation or malice," *Rentfrow v. State,* 123 Ga. 539 (51 SE 596) (1905). A finding of provocation sufficient to support a voluntary manslaughter conviction must be distinguished from a finding which will support a self-defense claim. Voluntary manslaughter by definition denotes one acting out of anger or passion; self-defense denotes one acting with a motive to prevent injury. "It follows that when one is reacting to repel an attack by an aggressor and his actions are prompted solely to protect his life, he is not acting under the 'excitement of passion,' because such acts are self-defense which are justified in the eyes of the law." *Odom v. State,* 106 Ga. App. 60, 62 (126 SE2d 472) (1962).

*Parham v. State,* 135 Ga. App. 315 (217 SE2d 493) (1975), is factually very similar to the case at bar. There the Court of Appeals overturned a voluntary manslaughter conviction because of lack of evidence. Parham testified that he was walking toward a parked sheriff's car when a deputy seated in the car suddenly began shooting at him. Parham returned the fire, killing the deputy. Concluding that Parham had acted in self-defense, not under heat of passion as contended by the state, the court noted that Parham did not fire until fired upon; he and the deputy were unacquainted and had never argued or feuded; and there was no evidence showing Parham acted in heat of passion. "While it is true, as the state contends, that being shot at by the victim may be 'serious provocation,' such would be true in nearly every self-defense case . . . There was no evidence of voluntary manslaughter." 135 Ga. App. at 318. The voluntary manslaughter charge given by the trial court was, therefore, reversible error.

As in *Parham,* the evidence in the record before us reveals a viable defense of self-defense, and does not demand a verdict of murder. Id. The evidence does not support a finding of voluntary manslaughter. All of Murff's actions were consistent with self-defense and defense of others. Witnesses to the shooting testified that Walker turned on Murff and without provocation fired a rifle at him. Murff instinctively returned Walker's fire in an attempt to defend himself and other bystanders in the Church's parking lot. The entire exchange lasted less than a minute, and there was no evidence of any prior altercation or bad feeling between Murff and Walker, who had never seen or spoken to each other before August 29, 1981. Cf. *White v. State,* 129 Ga. App. 353 (199 SE2d 624) (1973). Under these facts Murff acted with the sole motive of protecting himself and

others, not out of any "heat of passion."

A conviction of voluntary manslaughter was unauthorized and must be reversed. See *Parham v. State,* supra; *Odom v. State,* supra.

*Judgment reversed. All the Justices concur, except Weltner, J., not participating.*

DECIDED SEPTEMBER 8, 1983 —
REHEARING DENIED OCTOBER 4, 1983.

*William Lewis Spearman,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys,* for appellee.