A91A1856. LEE v. THE STATE.
(415 SE2d 290)

SOGNIER, Chief Judge.

George Michael Lee was indicted for the offense of murder and convicted of voluntary manslaughter. He appeals.

1. Appellant contends the evidence adduced at trial did not support his conviction of voluntary manslaughter but rather required the jury to decide either that appellant murdered the victim or that he killed the victim while acting in self-defense. Accordingly, appellant also contends that the trial court erred by charging the jury on the lesser included offense of voluntary manslaughter.

William Minton, a friend of appellant who was spending the night at appellant's home, testified at trial that he was present on the

evening of February 22, 1989 when appellant returned home in the company of the victim, Billy Pitts. After Pitts and appellant drank a beer, Minton heard Pitts begin to argue with appellant about money appellant allegedly owed him. Pitts pushed appellant around and threw him up against the fireplace, breaking some items on the mantel, then searched the house until he discovered appellant's safe. Minton testified that the assault on appellant had ended by this time, and that appellant told Pitts he could try to get into the safe if that was what Pitts wanted. Minton stated that as Pitts tried to open the safe with a small screwdriver, appellant walked into another room, returned to the hallway next to the room where Pitts was present, and shot Pitts once with a weapon identified by expert testimony as a .22 rifle. Minton testified that Pitts then said, "I'm sorry. Just let me out," and Minton pleaded with appellant to think about what he was doing. Appellant responded by saying, "[n]o. I'm going to kill the son of a bitch," and then fired repeatedly at Pitts as the victim was trying to get away. Minton testified that appellant then ordered him not to telephone the police, but after walking around the room for a few minutes "to pull himself together" appellant called the police. The police officer who first arrived on the scene testified that appellant admitted he had shot Pitts. The medical examiner testified that the wounds he examined during the autopsy indicated that Pitts had been shot seven times.

Appellant testified that he met Pitts at a bar that evening and invited him home. He stated he did not owe Pitts any money and told him about the safe in order to avoid being severely hurt in the assault. He denied leaving the room where Pitts was trying to force open the safe, but instead stated he reached into his bedroom for the already-loaded rifle and put it beside him. He recounted that when Pitts realized the safe would not open, Pitts stood up, loudly announced he wanted his money and was going to kill appellant, and moved toward appellant, knocking over the only lamp in the room as he neared. Appellant testified that he picked up his rifle and fired into the darkness in Pitts's direction, and that he quit firing when he was able to see that Pitts had moved away. Appellant maintained that the only words he heard Pitts utter were the money demand and death threat, and he denied hearing Minton plead with him to stop firing and ordering Minton not to telephone the police. He also denied saying out loud that he was going to kill Pitts, but testified on cross-examination that "I was probably thinking that."

"The evidentiary circumstances necessary to show voluntary manslaughter, as opposed to circumstances showing the homicide was justified [because committed in self-defense], relate to a situation which arouses sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without

malice aforethought, when it was not necessary for him to do so in order to protect himself. The distinguishing characteristic between voluntary manslaughter and justifiable homicide in such cases is whether the accused was so influenced and excited that he reacted passionately or whether the defendant acted simply to defend himself." *Williams v. State*, 232 Ga. 203, 204 (206 SE2d 37) (1974), overruled on other grounds, *Jackson v. State*, 239 Ga. 40 (235 SE2d 477) (1977). Although appellant testified that the provocation for the shooting was self-defense to repel Pitts's attack, the State adduced evidence from which the jury was authorized to find that Pitts's attack had ceased and that appellant was no longer in fear for his own safety when he suddenly and repeatedly shot Pitts, but that appellant acted "as the result of a sudden, violent, and irresistible passion resulting from serious provocation," OCGA § 16-5-2 (a), presented in the case sub judice in the form of Pitts's earlier assault on appellant's person. "[I]n order for an intentional killing to be reduced in severity from murder to voluntary manslaughter, the evidence must support a finding of provocation, passion and lack of cooling-off time. [Cit.]" *Murff v. State*, 251 Ga. 478, 479-480 (306 SE2d 267) (1983). The State presented evidence of all three elements, which distinguishes the case at bar from *Williams*, supra, cited by appellant, in which a charge on voluntary manslaughter was found to be inappropriate where the accused shot the victim 15 to 25 minutes after having concluded the argument between them with a handshake. The trial court did not err by charging the jury on voluntary manslaughter. *Lindsey v. State*, 196 Ga. App. 67 (3) (395 SE2d 328) (1990).

"The evidence here was in dispute as to whether appellant shot [Pitts] with malice aforethought (since he was charged with murder), out of passion, or out of justification in self-defense. The resolution of this question depended heavily on the credibility of the witnesses, including appellant. Decisions regarding credibility are exclusively for the jury. A rational trier of fact was authorized to find the elements of voluntary manslaughter beyond a reasonable doubt." (Punctuation and citations omitted.) *Watkins v. State*, 191 Ga. App. 325-326 (1) (382 SE2d 107) (1989).

2. Appellant contends the trial court erred by allowing the prosecutor to cross-examine the State's witness, Minton, as a hostile witness shortly after he took the stand. Although at the time the trial court declared Minton a hostile witness he had been unresponsive only as to one question, the remainder of his testimony reveals that even under cross-examination he was argumentative and unresponsive. In *Shouse v. State*, 231 Ga. 716, 719 (11) (203 SE2d 537) (1974), the appellant argued reversible error existed because the district attorney had posed leading questions to his witnesses throughout the trial. The Supreme Court found no merit in the contention, respond-

ing that " '[a] judge is given latitude and discretion in permitting leading questions, and unless there has been abuse thereof, resulting in prejudice and injury, there is no reversible error. [Cits.]' [Cit.]" Id. Similarly, we find no abuse of the trial court's discretion in the case sub judice.

3. Appellant contends the trial court erroneously failed to charge the jury regarding OCGA § 16-3-23. That statute provides that use of deadly force in defense of habitation is justified if the person "reasonably believes that the entry is made or attempted for the purpose of committing a felony therein." Id. at (2). It is uncontroverted that appellant invited Pitts into his home, and even accepting appellant's argument that Pitts accepted the invitation with the purpose of collecting money he thought appellant owed him, there is no evidence Pitts entered the house for the purpose of obtaining that money by committing a felony. *Stephens v. State*, 71 Ga. App. 417, 422-423 (2) (a) (31 SE2d 217) (1944). Therefore, the trial court did not err by not charging the jury on OCGA § 16-3-23.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JANUARY 22, 1992 —
RECONSIDERATION DENIED FEBRUARY 7, 1992 — 

*Garland & Samuel, Donald F. Samuel*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Carl P. Greenberg, Constance C. Russell, Assistant District Attorneys*, for appellee.