### A97A1057. JOHNSON v. THE STATE.
(494 SE2d 382)

BEASLEY, Judge.

James Johnson was convicted of voluntary manslaughter (OCGA § 16-5-2), aggravated assault (OCGA § 16-5-21), and possession of a firearm during the commission of a crime (OCGA § 16-11-106).

1. The three enumerations of error that challenge the denial of motions for directed verdict or for new trial concern sufficiency of the evidence, which is viewed in the light most favorable to sustaining the verdict.

Johnson and LeCroy were neighbors. One evening LeCroy, who was intoxicated, carried on a lengthy tirade from a corner of his property. LeCroy stood cursing, screaming, and threatening to kill Johnson for a period of 15 minutes or more. Johnson was some distance away at his residence but drove his truck to a position adjacent to LeCroy's property. He got out and waited near his truck, gesturing LeCroy to come down to the road.

LeCroy advanced and adopted an aggressive stance with his arms raised and his fists closed. When LeCroy was approximately six or seven feet away, Johnson raised and fired a handgun four times, fatally wounding him. While in custody shortly after the shooting, he stated to the officer: "A man can just take so much."

Johnson maintains the homicide was justified as self-defense, pointing out that LeCroy was a larger and younger man and that he had been told LeCroy was armed. Johnson testified that he thought LeCroy was reaching for a weapon when he turned sideways and his hand went out of sight, but several witnesses testified that LeCroy had not made any movement which appeared to be reaching for a weapon and had kept his hands raised and easily within Johnson's view. LeCroy had no weapon and did not attempt to strike Johnson, who did not withdraw or warn LeCroy that he was armed. Other evidence suggested that Johnson should have been aware that neighbors seeking to intervene to prevent a fight had approached to within a few feet at the moment he shot LeCroy.

" 'The evidentiary circumstances necessary to show voluntary manslaughter, as opposed to circumstances showing the homicide was justified (because committed in self-defense), relate to a situation which arouses sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do

so in order to protect himself. The distinguishing characteristic between voluntary manslaughter and justifiable homicide in such cases is whether the accused was so influenced and excited that he reacted passionately or whether the defendant acted simply to defend himself.'" *Lee v. State*, 202 Ga. App. 708, 709-710 (1) (415 SE2d 290) (1992). The evidence supported a finding that the lengthy verbal tirade and posturing by LeCroy was not followed by any actual physical assault and that Johnson could not have reasonably concluded he was in physical jeopardy when he suddenly fired.

" 'The evidence here was in dispute as to whether appellant shot [LeCroy] with malice aforethought (since he was charged with murder), out of passion, or out of justification in self-defense. The resolution of this question depended heavily on the credibility of the witnesses, including appellant. Decisions regarding credibility are exclusively for the jury. A rational trier of fact was authorized to find the elements of voluntary manslaughter beyond a reasonable doubt.' (Punctuation and citations omitted.) *Watkins v. State*, 191 Ga. App. 325-326 (1) (382 SE2d 107) (1989)." *Lee*, supra, 202 Ga. App. at 710. Johnson's contention that the conviction of possession of a firearm during commission of a crime was not authorized fails because it is predicated entirely on the hypothesis that the conviction on the underlying felony count was not authorized.

A rational trier of fact was authorized to conclude that defendant was guilty beyond a reasonable doubt of all offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lee*, supra at 709-710.

2. Johnson claims error in the court's failure to give a requested jury charge which he characterizes as "relating to the logical basis for the admission of specific acts of violence of the accused." These issues were waived when he failed to object on this basis after the court asked for exceptions following the charge. Counsel objected as to other issues and finally indicated there were no further objections, without reserving any right to raise additional issues on motion for new trial or appeal. *Russell v. State*, 264 Ga. 121, 122 (3) (441 SE2d 750) (1994); *Crosby v. State*, 188 Ga. App. 191, 194 (6) (372 SE2d 471) (1988).

3. Johnson objected to the introduction of recordings of conversations which a number of persons held with 911 emergency operators during the time of the confrontation. One objection was that no proper foundation had been developed for the introduction of this evidence according to the seven criteria set forth in *Brooks v. State*, 141 Ga. App. 725, 734 (8) (a) (234 SE2d 541) (1977), and *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211-212 (3) (88 SE2d 167) (1955). Johnson emphasizes the requirement that the speakers be identified. Most of the speakers can be determined, but the identity

of one or more of them remains unknown. Any resulting error was harmless since the information contained in the recording is cumulative of properly admitted testimony. *Crews v. State*, 226 Ga. App. 232, 234-235 (3) (486 SE2d 61) (1997).

4. The court did not err in sustaining the State's objection to defendant's attempt during closing argument to comment on the failure of the State to call the victim's widow and child as witnesses. There was no evidence that these family members of the victim knew facts relevant and material to the case. The assertion that these persons were witnesses to the shooting is not supported by the record. Their names on the State's list of witnesses did not alone provide authority for the defense comments. See *Morgan v. State*, 267 Ga. 203, 205 (3) (476 SE2d 747) (1996).

5. The court did not err in charging the jury that a person is not justified in using force if that person initially provoked the use of force against himself with the intent to use such force as an excuse to inflict bodily harm on the assailant. See OCGA § 16-3-21 (b) (1). The argument that this "first aggressor" charge was not authorized by the evidence is without merit. The victim's verbal tirade was delivered from the victim's property and at a substantial distance from defendant's home. The jury could reasonably have viewed Johnson's actions in driving to a location adjacent to the victim's property so they were closer together, and in gesturing to the victim to come to where he was located, as being intended to provoke the use of force.

6. There is one problematic issue. Johnson is entitled to a new trial at which his witnesses Childers and Todd are permitted to testify about the shooting victim's "prior specific acts of violence . . . . against third persons." The rule announced in *Chandler v. State*, 261 Ga. 402, 407 (3) (405 SE2d 669) (1991), authorizes this evidence and provides the procedure for notifying the State prior to trial, which Johnson did.

At Johnson's first trial, the jury found him guilty of malice murder, aggravated assault and possession of a firearm during the commission of a crime. The Supreme Court reversed the conviction because of counsel's ineffectiveness in failing to give the State advance notice of the victim's prior acts of violence and threats, which procedural failure precluded this evidence. *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996). Since the evidence was germane to Johnson's defense of justification, the Supreme Court concluded that its exclusion created "a reasonable probability that his trial might have resulted in conviction of a lesser offense, if not of acquittal, had the jury heard those witnesses." Id.

In anticipation of retrial, Johnson notified the court and the State over two months before trial that he intended to present seven witnesses (with an eighth added a week before trial) who would

testify about specific acts of violence. He enumerates as error the exclusion of Lucille Childers' and Donny Todd's testimony.

(a) As to Childers, the notice gave her exact address and telephone number in Rome and stated that she "is expected to testify that the alleged victim would regularly become intoxicated and assault any person in his presence. She contends she lived in pure torment of the alleged victim. She has seen the alleged victim knock people down with his fist within the last 2 years before his death." The trial court ruled the notice deficient in that it did not state the dates of these occurrences.

*Chandler* ruled that fundamental fairness requires advance notice so the opponent can prepare to rebut such evidence rather than being caught off guard and unable to produce evidence which would give the true picture. 261 Ga. at 408. The court foresaw that a procedural rule would be incorporated into the Uniform Superior Court Rules to achieve this purpose of providing "reasonable notice of [defendant's] intention and of the nature of such evidence," id. at 408 (3) (c), and USCR 31.6 was indeed adopted some two years later. The rule does require that the notice state the "date . . . for each specific act of violence sought to be introduced." USCR 31.6 (B).

In this instance Johnson pinpointed the date as best he could. As counsel explained to the trial court, what the notice stated was as close as Childers could get in identifying the dates of the incidents. That does not render the notice deficient. It told the State precisely that Childers could not remember the exact dates these repeated incidents constituting a pattern of behavior occurred but that this neighbor of the victim and the appellant (they all lived on the same road) would testify as to specific acts of violence. That is understandable, in that such a course of conduct apparently was not out of the ordinary for the victim and it would be unlikely that a neighbor would note the date each time an incident occurred and record it or commit it to memory.

This inability of Childers to pinpoint the dates would not preclude her testimony but would go only to its weight. See *Tidwell v. State*, 219 Ga. App. 233, 236 (2) (c) (464 SE2d 834) (1995) (two-year range is sufficient if that is best witnesses can do); *Parcell v. State*, 198 Ga. App. 439, 440 (1) (401 SE2d 628) (1991) (six-month range sufficient); *Willett v. State*, 223 Ga. App. 866, 873 (3) (b) (479 SE2d 132) (1996) ("approximate range of time" sufficient). Imprecision as to date would not mean that the specific acts did not happen. Nor is the time of the incidents, within two years of the shooting, too remote. See *Bohannon v. State*, 208 Ga. App. 576, 578 (2) (431 SE2d 149) (1993) (prior act of violence from year earlier admissible); *Joiner v. State*, 204 Ga. App. 592 (1) (420 SE2d 73) (1992) (acts of violence over period of time admissible); compare *Anderson v. State*, 138 Ga.

App. 871, 872 (1) (227 SE2d 783) (1976) (too remote where several years prior to incident).

To require the notice to have a precise date when the testimony itself would be admissible without a precise date would automatically preclude relevant evidence every time, evidence which in this case was regarded as so significant that the Supreme Court reversed Johnson's conviction because the jury was not aware of it. Such a barrier could not have been intended by the Supreme Court in *Chandler* and subsequent cases on the subject nor by the Uniform Superior Court Rules. Such a barrier would do much more than serve the purpose of the notice, which is merely "a mechanism by which the State is given an opportunity to investigate and to ferret out the facts," as Johnson argued below.

Defendant complied with the rule, but even substantial compliance would be sufficient to pass muster, as it does with respect to the notice required of the State by USCR 31.3 when it intends to present evidence of similar transactions of defendant. See *Jackson v. State*, 217 Ga. App. 485, 489 (4) (b) (458 SE2d 153) (1995); *Payne v. State*, 184 Ga. App. 366, 367-368 (2) (361 SE2d 666) (1987). The requirement for compliance by defendant with USCR 31.6 is to be applied evenhandedly with the requirement for compliance by the State with USCR 31.3. *Watkins v. State*, 264 Ga. 657, 662 (4) (449 SE2d 834) (1994).

The notice here did not lack the specificity required to alert the State so it could rebut it, as did the totally imprecise notices given in *Miller v. State*, 263 Ga. 723, 724 (2) (438 SE2d 81) (1994) (no description of nature or substance of evidence given in filed notice), and *Watkins*, supra (only oral notice of general nature given to State and none given to court).

(b) As to Todd, defendant gave his telephone number and exact address (thereby marking him as another same-road neighbor) and stated that he "is expected to testify that in January, 1994, the alleged victim shot Mr. Todd's dog to death while Mr. Todd was calling to the dog and pleading with [LeCroy] not to shoot. Mr. Todd is further expected to testify that the assault of [LeCroy] caused him to be in fear of great bodily harm."

Justice Weltner pointed out in his concurring opinion in *Lolley v. State*, 259 Ga. 605, 608 (3) (b) (385 SE2d 285) (1989), that "evidence of the violent nature of a victim can be critically important to the discovery of truth." The Supreme Court adopted Justice Weltner's reasoning, stating in *Chandler*, supra at 407 (3) (b), that he "cogently explained why this Court ought to change the rule." Both *Chandler*, supra at 407, and USCR 31.6 (A) limit such other-acts evidence to those acts directed against defendant or third persons. Unlike the situation in *Marks v. State*, 210 Ga. App. 281, 282-283 (1) (435 SE2d

703) (1993), where the act was directed solely toward a family pet, Todd was offered to testify that he himself was put in fear of great bodily harm because of the shooting of his dog. As counsel explained in the hearing, "Mr. Todd . . . [would] testify that Mr. LeCroy was standing out there cursing him and his dog, that [Mr. Todd] began to call his dog, and Mr. LeCroy shot. The dog got hit, and Mr. Todd thought he was being shot at, that the bullets were flying." Such testimony could very well constitute an act of violence against a person and was not excludable out of hand.

The judgment is reversed and the case remanded for new trial.

*Judgment reversed and case remanded. Andrews, C. J., Birdsong, P. J., Smith and Ruffin, JJ., concur. McMurray, P. J., and Eldridge, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

As I cannot concur with Division 6 of the majority opinion, I respectfully dissent. In my view, the majority has misapplied the decision of *Chandler v. State*, 261 Ga. 402, 407 (3) (405 SE2d 669). "The *Chandler* procedure sought to avoid a 'battle by surprise' by providing the State with 'reasonable notice' of the defendant's intent to introduce specified evidence of a victim's violent acts against third parties." *Watkins v. State*, 264 Ga. 657, 661 (4), 662 (449 SE2d 834). The procedure originally stated in *Chandler* is consistent with subsequently adopted Uniform Superior Court Rule 31.6 which provides, in part, that the defendant's notice of intent to present evidence or acts of violence by the victim against the defendant or third persons "shall state the act of violence, date, county and the name, address and telephone number of the person for each specific act of violence sought to be introduced." With regard to witness Childers, defendant failed to provide any particulars as to date, place, names of victims, or other details such as would identify any specific incident. Thus, the defendant "failed to provide any information which would put the state on notice of the evidence it intended to offer such that the state would have the opportunity for rebuttal." *Miller v. State*, 263 Ga. 723, 724 (2) (438 SE2d 81). Accepting that Childers' inability to pinpoint the dates would not alone preclude admission of her testimony, there are additional circumstances which render the proffered testimony so general and equivocal in nature that the State is afforded no opportunity for rebuttal. In addition to the absence of dates, the proffer fails to identify any person assaulted by the victim or the place where any of the alleged events occurred. The proffered evidence affords the State no opportunity to identify any specific event about which Childers may testify. Under these circumstances, I would hold that the trial court did not err in excluding the testimony of witness Childers.

Nor do I believe the trial court erred in refusing to admit the testimony of witness Todd concerning an incident during which his dog was shot by the victim. The rule adopted in *Chandler* has been held to be applicable only to prior acts of violence toward a human. *Marks v. State*, 210 Ga. App. 281, 282 (1) (435 SE2d 703). The State was not provided with any notice of an act of violence against witness Todd. Defendant's notice to the State related the shooting of a dog owned by witness Todd and that this witness "is further expected to testify that the assault of the alleged victim [on his dog] caused him to be in fear of great bodily harm." This expression of apprehension or fear does not amount to a statement that an act of violence was directed by the victim toward witness Todd. Nonetheless, at the hearing on the admissibility of the defense evidence of acts of violence by the alleged victim, defense counsel restated the testimony anticipated from witness Todd to include the statement quoted by the majority that "Mr. Todd thought he was being shot at, that the bullets were flying." Defense counsel also inquired of the trial court during colloquy: "[Witness Todd] cannot testify that Mr. LeCroy was pointing a gun in his direction and shooting?" However, the scope of the statements attributed to witness Todd at the hearing by defense counsel exceeded that of the notice provided the State. If the statements of the anticipated testimony of witness Todd are considered separately, the statements provided in the notice to the State were properly excluded pursuant to the *Marks* decision, while the expanded statements of witness Todd's testimony provided by defense counsel at the hearing were properly excluded because no notice was provided the State pursuant to USCR 31.6.

Furthermore, even if the excluded evidence of acts of violence by the victim should have been admitted, there was no harm since the excluded evidence was at most cumulative of defendant's admitted evidence by other witnesses concerning the victim's propensity for violence. It is highly unlikely that the excluded evidence would have altered the verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869); *Marks v. State*, 210 Ga. App. 281, 283 (1), supra. The judgment of the trial court should be affirmed.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED DECEMBER 2, 1997.

*Patton & Price, Clarence R. Patton*, for appellant.

*Tambra P. Colston, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.