47510. ALLEN v. THE STATE.
47511. MASTERSON v. THE STATE.

SUBMITTED SEPTEMBER 12, 1972 — DECIDED MARCH 1, 1973.

*Glenn Zell,* for appellants.

*Lewis R. Slaton, District Attorney, Donald G. Frost, Jack Mallard, Joel M. Feldman,* for appellee.

HALL, Presiding Judge. It is well settled that evidence of an expectation of leniency by a prosecution witness who is or could be charged or convicted of a crime is relevant to the question of his credibility. 62 ALR2d 610-668. The issue here involved the extent of the duty owed by a prosecutor to disclose information he has concerning such an expectation.

In our opinion this case is controlled by Giglio v. United States, 405 U. S. 150, 153 (92 SC 763, 31 LE2d 104) which states: "As long ago as Mooney v. Holohan . . . this court

made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' This was reaffirmed in Pyle v. Kansas . . . In Napue v. Illinois . . . we said, 'the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears'. . . Thereafter Brady v. Maryland . . . held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.' . . . When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. . . . A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . .' Napue v. Illinois, supra. . . [W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. . . . Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." Giglio, supra, p. 108.

Taylor knew of the prosecutor's promise of leniency through his attorney, yet he denied on cross-examination that he had been promised anything. The true facts did not emerge until after the trial. The state contends that Giglio is distinguishable on the ground that here the prosecutor did not know that the promise had been relayed to the witness by his attorney contrary to the prosecutor's instructions. In view of the fact Giglio and Brady hold that the good faith of the prosecutor is immaterial, we fail to see any distinction. As we read Giglio, evidence of any understanding or agreement as to

future prosecution of an accomplice, on whose testimony the state's case almost entirely depends, is relevant to his credibility; the jury is entitled to know of it; the prosecutor has a duty to disclose it; and the failure to make this disclosure violates due process and requires the reversal of the conviction and a remand for a new trial.

The holding here means simply that prosecuting attorneys cannot do indirectly (promise the witness's attorney) what they cannot do directly (promise the witness himself). Even if an attorney does *not* relay the actual promise to his client, his tactical advice to his client will, of course, be affected by his knowledge of it. The mandate of the Supreme Court of the United States cannot be circumscribed by a patent subterfuge. The way to insure swift criminal justice and a valid conviction is for the state to disclose to the jury evidence of any understanding or agreement as to the future prosecution of a witness. Where this evidence is withheld from the jury, the conviction will be in jeopardy.

The state contends that even if Giglio requires disclosure by the prosecutor, his failure does not require a reversal because there was sufficient independent proof to sustain the conviction. It is true that failure to disclose does not automatically require a new trial. However, a new trial is required if the evidence is material and could in any reasonable likelihood have affected the judgment of the jury. Taylor was the sole eyewitness testifying for the state to the aggravated battery. It follows that there is a reasonable likelihood his evidence could have affected the judgment of the jury. The court erred in denying the motions for new trial.

*Judgments reversed. Bell, C. J., Eberhardt, P. J., Deen, Evans, Clark and Stolz, JJ., concur. Pannell and Quillian, JJ., dissent.*

PANNELL, Judge, dissenting. The state cannot be charged with denial of due process for withholding evidence affecting the credibility of a state witness in the

absence of knowledge or evidence imputing knowledge to the prosecution that would be attributable to the state.

I can find nothing in the prosecutor's affidavit or elsewhere in the record to justify the statement in the majority opinion's summary of the situation that "The prosecutor's affidavit essentially agreed that a bargain had been struck . . ." On the contrary, I find implicit in that summary that the trial judge weighed the affidavits on defendants' motions for new trial and by denying such motions rejected Taylor's attorney's affidavit.

In the interest of clarity, to avoid misinterpretation and to facilitate application of the established rules in such cases, it is necessary to quote extensively from the transcript and the record.

The co-defendant, Taylor, denied at appellants' trial that he had been promised anything by the state, but that his attorney said "he was going to do anything he could for me." Taylor testified that the appellant Allen shot the victim. Allen, in his unsworn statement, alleged that Taylor fired the shot and that he tried to "avoid Mr. Taylor from shooting Mr. Wynn, . . . but I couldn't." The unsworn statement of Masterson supported that of Allen.

(Mr. Lewis Ellis, present in the room when the victim was shot at the doorway, saw James Taylor standing directly in front of the door with his arms down beside him and nothing in his hands.)

By affidavit, Taylor's attorney asserts that he had a mutual understanding with the state's prosecutor "that in the event that Taylor did testify and was helpful to the state in prosecuting its case, the district attorney would make recommendation for a short prison term or a probated sentence and fine, or perhaps a suspended sentence," and he so informed Taylor.

The state's prosecutor, by affidavit, relates he told Taylor's attorney "that in view of the limited extent of his [Taylor's] involvement I would probably recommend probation and a fine" but "I requested [Taylor's attorney]

not to advise Taylor of our discussion with regard to what I might recommend to the court in his case. During the trial, but before placing Taylor on the stand as a witness, I talked to Taylor outside the courtroom and informed him that all I wanted was the truth if he decided to testify in the trial; that I did not know what his attorney had told him, but that I could not and would not make any promise as to what I would recommend to the court in his case. After the trial of the case, I made a recommendation to the court of 10 years suspended for the following reasons: (1) The evidence indicated that Taylor was passively involved and took no active part in procuring the weapon, neither was he the trigger man. (2) Evidence indicated that Taylor was drunk in the rear seat of the car prior to the shooting and apparently did not know in advance what was going to happen. (3) The victim personally, after the trial was over and during one of his lucid intervals, requested leniency for Taylor, saying that Taylor had been a friend and he did not feel that Taylor would have knowingly become involved in hurting him."

In Napue v. Illinois, 360 U. S. 264, 266 (79 SC 1173, 3 LE2d 1217), the U. S. Supreme Court dealt with a situation somewhat similar but distinguishable in critical respects from this case. There, the prosecutor admitted in a post trial affidavit that "as prosecuting attorney he had promised Hamer [the witness] that if he would testify against Napue, 'a recommendation for a reduction of his (Hamer's) sentence would be made and, if possible, effectuated.' "

Likewise, in the case of People v. Savvides, 1 N. Y. 2d 554 (136 NE2d 853, 154 NYS2d 885), relied on by appellants, an assistant prosecutor who had an understanding with a witness concerning his withdrawal of a plea dependent on his "continual, truthful, cooperation" remained silent when the witness denied from the stand he expected "any consideration" in return for his testimony.

In a recent case, Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104), an Assistant United States Attorney, the first to deal with the accused's co-conspirator, promised the co-conspirator that he would not be prosecuted if he testified for the government. When testifying, the co-conspirator denied he was told he wouldn't be prosecuted.

In Giglio (p. 154), the court said: "The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government." The same rule was followed in United States v. Harris, 462 F2d 1033, where a deal made with one federal prosecutor was imputed to a federal prosecutor in another district.

These cases, representing the leading case law, all have common threads. In each it is clear beyond cavil that a government prosecutor personally made a promise of some consideration to the witness. In each, the government used the witness and did nothing to inform the jury of such promises even though the witness denied them. In each, the promises were attributable to the government. In each, the nondisclosure of the evidence affected the co-conspirator's credibility.

In the case sub judice there is no evidence of personal contact between the witness and prosecutor, except on the day of the trial as related, supra. It is clear from the affidavit of the prosecutor that his sentence recommendation would be based solely on the limited extent of Taylor's involvement in the offense, that he requested the attorney not to advise Taylor of the discussion, that he was not privy to conversation between Taylor and his attorney and had no way to know what, if anything the attorney told Taylor. His sentence recommendation in Taylor's case was based on factors other than his testimony as a witness. Since knowledge of any promise was not imputable to the prosecutor, it could not be attributable to the state.

Under the facts of this case, I conclude that no action of the state deprived appellants of due process of law in violation of the Fourteenth Amendment to the U. S. Constitution.

Although not treated by the author-judge some consideration should be given Masterson's allegation that there was no evidence to show that he aided or assisted Charles Allen in committing the aggravated battery. The evidence admitted at trial established Masterson participated in an altercation with the victim earlier in the evening, accompanied the other co-defendants to obtain a shotgun, drove the car to the victim's house, was present when the shooting occurred, fled the scene, and drove the getaway car. I conclude there was sufficient evidence from which the jury could conclude that Masterson aided or assisted in committing the aggravated battery.

I would affirm the convictions and sentences.

I am authorized to state that Judge Quillian concurs in this dissent.