## 64386. HOWELL v. THE STATE.
## 64422. SIKES v. THE STATE.

DEEN, Presiding Judge.

Appellants Howell and Sikes together with defendants Dean and Toole were indicted for armed robbery. Dean pleaded guilty. The remaining three were jointly tried and convicted. The evidence indicates that two men wearing coveralls, masks and gloves held up the prosecutrix, an elderly woman living alone on a small farm, roughed her up and stole cash, her pickup truck, a pistol, watches, blackjack and cigarettes. The prosecutrix notified police who found the victim's automobile in which the robbers had fled abandoned on the roadside where it "conked out." The two men then struck out through the woods discarding their gun, coveralls and other articles of clothing; came to a white getaway car belonging to defendant Sikes and attempted escape but were stopped and arrested by the sheriff who was in pursuit after being notified of the robbery. He had found the abandoned car and was tracking footprints of two men leading from the car into the woods. He saw one fugitive, and shortly thereafter saw the fleeing getaway car and followed it, coming upon it stopped at a mudhole. At that time the defendants Toole and Dean had stepped out of the car, leaving one unidentified man still inside. After a highspeed chase the three men left the car. Dean and Howell were captured at that time with the aid of bloodhounds, and Toole was later arrested.

Dean, who had entered a guilty plea but had not been sentenced at the time of this trial, testified for the state. According to him, the conspirators had all met at Sikes' house to plan the robbery. Sikes did not accompany them to the farm, but contributed his wife's truck as a getaway car, as well as the coveralls, gloves, ski masks and pistols used in the robbery. Dean's description of the chase and capture agreed with that of law enforcement officers. Following conviction, Howell and Sikes filed separate appeals, which we here consider together.

1. It is urgently contended that the state has fallen afoul of Mooney v. Holohan, 294 U. S. 103 (55 SC 340, 79 LE 791) (1935); Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972); Allen v. State, 128 Ga. App. 361 (196 SE2d 660) (1973) and like cases in that Dean was allowed to testify although the record shows he was promised a lesser sentence for his cooperation; that Dean committed perjury on the stand in denying this fact, and that the district attorney failed to take any steps to correct the false impression being presented. "Evidence of any understanding or agreement as to a future prosecution of an accomplice, on whose testimony the state's case almost entirely depends, is relevant to his credibility; the jury is

entitled to know of it; the prosecutor has a duty to disclose it; and the failure to make this disclosure violates due process and requires the reversal of the conviction . . ." *Allen v. State,* 128 Ga. App. 361, supra.

In the present case Dean testified that the district attorney never offered him leniency in regard to his sentence if he testified as the state expected him to; that he had figured he would probably receive the same as the others, that he was confessing to get it over with; he asked his lawyer if there was a chance of getting a light sentence and his lawyer said he didn't know, he had no commitment. Asked about his personal attitude, he was not told he would receive less than everybody else. His attorney "said he didn't know how things would go." He asked if there would be any chance of his getting 5 or 10 years and the only answer was, "I don't know." Dean's attorney told the court that in the absence of Dean he discussed with the sheriff the possibility of a 10-year sentence with five years probated but that this happened after Dean had already confessed. The sheriff remembered the discussion and denied he had definitely promised a recommendation. Further, in the concluding argument to the jury the district attorney stated, "I told you in my opening arguments that he would testify, that he was a codefendant, and the state somewhere along in time would recommend to the court some leniency for his testimony."

A fine line, marking vastly different consequences, exists between plea bargaining and induced confessions. This case perhaps illustrates the narrowness of that line. An agreement by a prosecuting attorney to make certain recommendations if the defendant pleads guilty is perfectly proper and enforceable. Ga. Criminal Trial Practice, Daniel, § 15-2. If, however, the agreement includes the offering of testimony against an accomplice the credibility of the witness is at stake and the jury should on the trial of the alleged accomplice be apprised of the facts; the prosecutor has a duty to make the disclosure and where the fact is allowed to be concealed reversal must ensue. *Allen,* supra; *Price v. State,* 141 Ga. App. 335 (2) (233 SE2d 462) (1977); *Williams v. State,* 151 Ga. App. 683 (4) (261 SE2d 430) (1979); *Dudley v. State,* 148 Ga. App. 560 (5) (251 SE2d 815) (1978). "In order for there to be a reversal, however, there must be evidence that such information existed at or before trial, and that such information was actually withheld." *Potts v. State,* 241 Ga. 67 (2) (243 SE2d 510) (1978); *Echols v. State,* 231 Ga. 633 (1) (203 SE2d 165) (1974). Here there was no bargain as to the sentence to be imposed, but there was an agreement to recommend leniency, although whether before or after the confession was first made to the sheriff is unclear. This much the district attorney himself told the jury. No reversible error appears.

2. "Under § 38-121, testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of the accomplice." *West v. State,* 232 Ga. 861, 865 (209 SE2d 195) (1974). *Hill v. State,* 236 Ga. 831 (225 SE2d 281) (1976). The testimony of the confessed accomplice Dean that he together with Howell and Toole met at the Sikes home the day before the robbery to plan its details is corroborated by the testimony of Mrs. Sikes that the four did in fact meet there on that day, and that this was the only time she had seen either Dean or Howell at her home. She also testified that her husband asked her to lend her truck to Howell "for a trip to Florida" and that she consented. Other evidence identified that truck as the getaway car in which the co-defendants were captured and arrested. These and other facts relate to the identification of the defendant Sikes, and the discovery of a ski mask in the truck and coveralls in the woods provide additional corroborative material. While a conviction based upon the testimony of an alleged accomplice uncorroborated is insufficient, corroboration itself is peculiarly a matter for the jury, and may be shown by direct or circumstantial evidence tending to show the defendant's participation. *Self v. State,* 108 Ga. App. 201 (132 SE2d 548) (1963). The evidence corroborating the accomplice's testimony need not of itself be sufficient to support a verdict of guilty. *Gunter v. State,* 243 Ga. 651 (256 SE2d 341) (1979).

3. Additional corroboration of Dean's testimony that Sikes furnished the coveralls found in the woods and used in the robbery was attempted by the testimony of a deputy sheriff who stated that he had 16 years experience as a boilermaker and welder; that Sikes was also a boilermaker; that the coveralls and shoes offered in evidence were found two or three hundred yards from the gun on the road and in the same place as the gloves; that they were insulated coveralls, the kind welders use, and that they were unusual in that there were burn holes on the outside of them, which looked like coveralls he personally owned, and that boilermakers routinely have coveralls like that with burns caused by electric arc welding, which does more damage than a burning torch. Electric arc welding is used every day in boilermaking. The evidence was prima facie admissible, and its probative value was for the jury. *Leonard v. State,* 157 Ga. App. 37 (276 SE2d 94) (1981); *Gooch v. State,* 155 Ga. App. 708 (272 SE2d 572) (1980).

4. Code § 27-1302 provides that if an oral statement made by the defendant while in police custody is timely requested in writing, no portion thereof which is "relevant and material (incriminating or inculpatory)" shall be used against the defendant unless previously furnished to him. Defendant's counsel was furnished a statement

that defendant Sikes came to the sheriff's office and said he was here to pick up his car; he had loaned it to Jimmy Lee Howell for a trip to Florida. The witness already knew that Sikes was a boilermaker. He did not remember Sikes, but Sikes volunteered to him while walking from the courthouse to the jail following his arraignment that he and the witness had worked together on a job in Fernandina. The court ruled that the statement was not relevant as being either inculpatory or incriminating, and allowed its admission. We agree with the trial court that those parts of oral statements required to be furnished must be relevant, material, and of an inculpatory cast. *Per se,* this statement was not inculpatory and therefore not relevant. If it is argued that it became so because used in an identification sequence, the answer is that the deputy sheriff knew he and the defendant had followed the same occupation prior to this conversation, and it added nothing to that knowledge except that the defendant recognized the witness, a fact in no way related to the former's guilt or innocence. No error appears.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 10, 1982.

*Dan MacDougald,* for appellant (case no. 64386).
*George L. Hoyt,* for appellant (case no. 64422).
*C. Deen Strickland, District Attorney,* for appellee.