## 42591. LEEKS v. THE STATE.
(335 SE2d 387)

GREGORY, Justice.

Etroma Leeks was convicted of the murder of his wife Annie Leeks and Michael Briddy. Leeks' motion for new trial was overruled. We affirm the conviction.

On December 4, 1983, police found the bodies of Mrs. Leeks and Briddy in Mrs. Leeks' apartment. Mrs. Leeks had been shot once in the abdomen while Briddy had been shot once in the head. Police were told by neighbors that Mrs. Leeks' estranged husband, Etroma, had been seen entering the apartment shortly before the shooting. Soon after, another police officer saw Leeks get into a car nearby, apparently hitchhiking. Upon stopping the car, the officer arrested Leeks and found a .32 caliber pistol in his possession. The pistol contained two spent shells. A state crime laboratory analysis revealed the bullets that killed Mrs. Leeks and Briddy had been fired by the same gun.

An Atlanta police officer testified that about a month before the shooting, Briddy had stopped him and said Leeks was threatening him. Leeks later told the officer he was upset because Briddy had been "messing around with his wife." A neighbor of Mrs. Leeks also testified to hearing threats by Leeks against Briddy. Another neighbor testified that a month or two before the shooting she saw Leeks beating his wife. Other witnesses testified that the Leeks couple had not been living together for about three months, although Leeks himself denied this.

On the day of his arrest, Leeks gave the police a written statement, which included the following account of the shooting: "I had entered the apartment from the back door. So then I went upstairs and when I entered the second bedroom I saw my wife and I think his name is Michael Briddy, and when I saw them they were [engaged in sex] in the bed. So I saw the gun on the ironing board which was close to the door in the bedroom so then I said what the hell [is] going on and I picked up the gun and shot. Then I cocked the gun back and I ran over to them and my wife grabbed my hand and the gun went off and hit her. Then I picked her up and asked her what was wrong and she said nothing."

At his trial, Leeks testified that when he entered the bedroom he saw a nude male whom he did not recognize in bed with his wife. Leeks said he thought his wife was being raped, so he shot the man. He then repeated his statement claiming an accidental shooting of Mrs. Leeks.

1. Leeks contends the trial court erred by instructing the jury on the law of confession when there existed no evidence to substantiate the charge. Leeks maintains that his statement to detectives is merely

an incriminating statement and not a confession, and thus the charge on confessions tainted his defense by placing a cloud of partiality on the jury giving them the impression that Leeks admitted his guilt.

Without deciding whether the statement in question is a confession or incriminating statement, we hold that the judge's references to confessions, when viewed in the context of the entire charge, did not harm Leeks.[1] As in *Richards v. State*, 251 Ga. 447, 449 (306 SE2d 302) (1983), the charge as given was not a charge on confessions, and the passing reference to confession was not enough to give the impression that the court considered the statement a confession. See also *Golden v. State*, 250 Ga. 428, 429 (297 SE2d 479) (1982).

2. Leeks also claims the trial court erred in denial of a motion for new trial on general grounds of sufficiency of the evidence. However, a review of the evidence adduced at the trial in the light most favorable to the jury's verdict shows that a rational trier of fact could have found Leeks guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

---

[1] The portion of the trial judge's charge concerning Leeks' statement reads: "Ladies and gentlemen, I charge you that an alleged statement by the defendant has been admitted into evidence and read to you. Before you consider this evidence for any purpose you must first decide whether the statement was clearly voluntary and freely and willingly given.

"To be voluntary, a statement must be freely and willingly given with complete understanding and without threats or use of violence, fear or injury or suggestion or promise of leniency or reward. A statement induced by the slightest hope of benefit or remotest fear of injury is not voluntary.

"To be voluntary, a statement must be the product of a free will and not under compulsion of any necessity imposed by others.

"The burden of proof is upon the State to establish that the statement was voluntary and freely and willingly made.

"If you find that the statement was voluntary, then you may consider it as evidence and you will apply the general rules for testing the believability of witnesses and decide what weight, if any, you will give to all or any part of the evidence. However, if you fail to so find, you must disregard the statement entirely and give it no consideration in reaching your verdict.

"You should consider with great caution the evidence of any admission or incriminating statement by the defendant. In weighing such evidence, you should consider whether the statement was made by the defendant, whether it was truthful, whether it was accurately recorded, whether the defendant understood what was said, the circumstances under which it was made, the emotions of hope or fear that may have existed.

"The jury may believe admissions or incriminatory statements in whole or in part, believing that which they find to be true and rejecting that which they find to be untrue.

"Upon you alone rests the duty to apply the general rules for testing the believability of witnesses and to decide what weight should be given to all or any part of such evidence.

"A confession alone, uncorroborated by other evidence, will not justify a conviction. The amount of corroboration to authorize a conviction upon such confession is a question of fact to be determined by the jury."

*Drew Findling,* for appellant.

*Lewis R. Slaton, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.