S91A0074. GLAZE v. THE STATE.
(402 SE2d 729)

BELL, Justice.

Herbert Earl Glaze appeals from his convictions of felony murder (with cruelty to children as the underlying felony) and of cruelty to children in connection with the death of Clifton Lamar Burton.[1] We affirm the conviction of felony murder and vacate the conviction of cruelty to children.

---

[1] The crimes occurred on August 30, 1989. Glaze was indicted in November 1989. The verdict was returned on February 14, 1990. Glaze was sentenced on February 16, 1990. On March 16, 1990, he moved for a new trial. The court reporter certified the trial transcript on May 29, 1990. On August 24, 1990, the trial court denied the motion for new trial. Glaze filed a notice of appeal on September 13, 1990. The clerk of the trial court certified the record on October 8 and 12, 1990, and the record was filed with the clerk of this Court on October 17, 1990. The appeal was submitted for decision without oral argument on November 30, 1990.

1. Appellant argues the evidence was insufficient to support the conviction of felony murder, which was based on the underlying felony of cruelty to children.

There was evidence appellant beat the victim, who was three years old, with multiple blows to the body; that the beating caused the victim's brain to swell; and that the swelling caused the victim's death. We find the evidence authorized a rational trier of fact to find appellant guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. "[Glaze] may not be convicted of felony murder and also be convicted of the underlying felony (cruelty to children) which was alleged by the indictment to support the conviction of felony murder. [Cits.] The conviction for cruelty to children is therefore vacated." [*Zackery v. State*, 257 Ga. 442, 443 (2) (360 SE2d 269) (1987).]

3. Appellant contends the court erred by failing to charge the jury on accident as a defense, but we find no error.

When considered in light of testimony by the victim's mother and the medical examiner who performed the autopsy on the victim, appellant's testimony did not require instructing the jury on accident.

Appellant lived with the victim's mother, who worked days at a Union 76 gas station. Appellant worked the night shift at the same Union 76, and cared for the victim during the day while the mother worked. The mother testified that at 7:00 a.m. on August 30, 1989, she took the victim to the Union 76, where appellant took the victim and went home. She said that she had not disciplined the victim that morning or the previous day, and that the victim was in good health when she turned him over to appellant. Appellant later telephoned her and told her they were home and were going to go over the victim's ABCs and counting. Around 9:00 a.m. appellant telephoned her and told her that the victim had stopped breathing.

Dr. Dunton of the Fulton County Medical Examiner's Office performed the autopsy on the victim. He testified that during his external examination he made the following observations:

[O]n the back portions of the arms, the back, buttocks, the back portions of the legs, . . . there were areas of dark red irregular outlines, discoloration, on all of those body surfaces.
. . .

The injuries on the child's body would roughly have covered the back sides of his arms from this level (indicating) almost all the way down to the wrists, on both sides, down this way (indicating).

He had some discolorations that were longer than they were wide, that is little rectangular marks here, here, here (indicating), and some that were also running this way (indicating).

· There were some across the buttocks in a similar fashion, more this way (indicating) and then all along the backs of the thighs (indicating), sparing the little area right here behind the knees and down on both calves.

They were very irregular, confluent if you want to think of it, areas sort of running together. All of these areas were dark red.

Dr. Dunton said that he then made incisions in the body to determine "whether the discoloration extended deeper into the tissues [than the surface of the skin], which would represent bruises," as opposed to lividity from the pooling of blood after death. The incisions revealed that

[t]hese [the surface discolorations] all represented bruises. There was bleeding in the tissues beneath the skin, . . . between the surface of the skin and the underlying muscles in the layer of fat and other tissues. Bleeding, fresh bleeding was present in all of those areas, on the backs of the arms, on the back of the buttocks, on the backs of the legs.

According to Dr. Dunton, the victim had "severe bruises" that "were on the backs of the arms, on the back of the buttocks, on the backs of the legs." He said that in general "it would take a significant blow to produce the kind of bruising that this child had in the areas that he had."

Dr. Dunton later testified that he had seen no evidence of bruises that were older than a day, and in particular that the bruises were "[a]t the very outside limit, no more than a day, but likely not that old, probably a matter of hours."

When asked whether the force inflicted on the victim was consistent with a "spanking," Dr. Dunton testified "[t]hat's not the term I would use . . . I would use the term beating."

Appellant testified that after he and the victim arrived home at 7:15 a.m. on August 30, he "disciplined" the victim for inadequate performance during counting exercises. According to appellant, during a 15-minute period he "spanked" him with a belt, striking him 11 or 12 times, but the victim did not act as if he was in distress or pain after the beating. Appellant asserted he had not intended to kill or be cruel to the victim.

Appellant argues that his testimony was sufficient to create an issue whether he killed the victim by accident, and that the trial court therefore erred by refusing to grant his request to instruct the jury on accident.

However, although appellant testified that he "spanked" the victim without any intent to kill or be cruel, his testimony was wholly inconsistent with the evidence that the victim was in good health within approximately two hours of his fatal injuries; that the victim's back, buttocks, and the backs of his arms and legs were covered with severe bruises that generally would require significant blows to inflict; that the bruises were no more than a day old and were probably just hours old; and that the child had been "beaten" rather than "spanked."

> "The evidence does not show accident or misfortune and it was not error to fail to charge these principles of law to the jury in this case." [Cits.] The spanking which appellant admitted giving the child simply could not have caused the injuries that led to its death. [*Holt v. State*, 247 Ga. 648, 650 (2) (278 SE2d 390) (1981).]

4. The victim's mother was jointly indicted with appellant, but at appellant's request her trial was severed from his trial. She had not yet been tried when appellant was tried,[2] and testified as a witness for the state. Appellant contends that his cross-examination of the mother was improperly limited during the following colloquy:

> Q. . . . And as a result of [a detective's] questioning, and I assume his further investigation, is that when [appellant] was charged with the murder of [the victim]?
>
> A. Yes.
>
> Q. Were you not also charged yourself with the same thing at that time?
>
> A. No.
>
> Q. You were never indicted for murder?
>
> [The State:] Your Honor, that was not the question he asked her.
>
> Q. I'm asking her that question now. Were you indicted for

---

[2] The record does not show whether the mother was tried after appellant was convicted.

murder yourself?

A. Yes.

Q. So in exchange for your testimony, you've worked out some kind of deal with the state?

A. No, I have not.

[The State:] Your Honor, I'm, going to object. That is a compound question. It calls for a conclusion on the part of the witness and also it's argumentative.

The Court: Sustained.

[Appellant's counsel:] Your Honor, if I may be heard on that, the question has been asked to go toward the interest and bias of this particular witness. If she has been charged along with Herbert Glaze for the same offense, she has an interest in the case and I just want to know what that interest is.

The Court: Same ruling.

Appellant contends he was denied his Sixth and Fourteenth Amendment right to confrontation in that the court prohibited him from impeaching the mother with evidence of bias by inquiring about any negotiations she may have conducted with the state in order to avoid prosecution.

However, we find no error in the trial court's ruling. As the state points out in its brief to this Court, the prosecution objected to the *form* of the question, and it was on that basis that the court initially sustained the objection. Appellant's counsel's argument to the trial court in support of the question went to the *substance* of the question and his *reason* for asking it, rather than to the state's objection to the form. After the court repeated its ruling, appellant's counsel made no attempt to continue his line of questioning in any other form.[3]

5. Appellant's enumeration concerning the trial court's charges on involuntary manslaughter and reckless conduct has no merit.

6. Appellant asserts that the court erred by allowing autopsy photographs of the victim into evidence. However, appellant "did not ob-

---

[3] We note there is nothing in the record to indicate that the mother had negotiated or entered into a deal with the state. We further note appellant did not attempt to argue at trial, nor does he argue on appeal, that regardless of whether there was a deal he should have been permitted to explore the possibility that the mother was shading her testimony to please the prosecution. See *Hines v. State,* 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982); *Owens v. State,* 251 Ga. 313, 314-317 (1) (305 SE2d 102) (1983).

ject to the admission of the photographs at trial[, and h]is failure to object at trial precludes his raising the error on appeal. [Cits.]" *Daniels v. State,* 252 Ga. 30, 32 (7) (310 SE2d 904) (1984).

7. Appellant gave a statement to the police during their investigation of the homicide. Appellant argues that the statement was at most an incriminating statement rather than a confession of guilt, and that because the statement was not a confession the trial court erred by giving an instruction on confession of guilt.

The court instructed the jury in pertinent part as follows:

[A] legal definition of a statement or *confession* is a fact stated by the defendant pertinent to the issue tending in connection with other facts and circumstances to prove guilt of an accused, which of itself is not sufficient to authorize a conviction.

An admission is a circumstance which requires testimony or evidence to authorize a warrant or [sic] reasonable conclusion of guilt of the crime charged.

I charge you if you should admit for your consideration before any such alleged statement is made [sic], it should be scanned with care and received with great caution.

I charge you there is a difference between an incriminating statement and a *confession of guilt*. [Emphasis supplied.]

We hold that

[t]he charge as given was not a charge on confession. The passing reference[s] to confession [were] not enough to give the impression that the court considered the statement a confession. Therefore, even if the statement was not a confession but, rather, a mere incriminatory statement, we find it probable that in view of the charge as a whole the incidental use of the word "confession" did not contribute to the verdict. [Cit.] [*Richards v. State,* 251 Ga. 447, 449 (1) (306 SE2d 302) (1983.]

Accord *Leeks v. State,* 255 Ga. 69 (1) (335 SE2d 387) (1985).

8. The arguments raised by appellant in support of his enumeration that the court erred in its instructions concerning the form of the verdict have no merit.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Hunt, J., who concurs in the judgment only.*

DECIDED APRIL 11, 1991.

*Jonathan Goldberg, Nancy M. Markle,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Robert D. McCullers,* for appellee.