### S94A0685. WATKINS v. THE STATE.
(449 SE2d 834)

BENHAM, Presiding Justice.

Appellant was convicted of malice murder in connection with the death of Cedric Wynn.[1] Appellant admitted that he fired the shotgun

---

[1] The homicide took place on December 20, 1992, and appellant was arrested the next day. He was charged with malice murder in an indictment returned February 16, 1993, and stood trial April 14-16, 1993. The jury returned a guilty verdict on April 16, at which time appellant was sentenced to life imprisonment. A motion for new trial, filed May 14 and

blast of birdshot that struck and killed the victim at a Swainsboro carwash, but contended he did so in fear of the victim. The State presented evidence that appellant, while riding with friends, spotted the victim in the carwash and had the driver of his vehicle turn around and enter the carwash parking area. Appellant, armed with the shotgun, then exited the car and approached the victim, who raised his arms in the air and turned away from appellant as if to enter the truck he had been drying. At that point, appellant fired the shot that fatally struck the victim. Appellant returned to his companions' car and left the scene. Several of appellant's companions testified that appellant was angry with the victim for having "beaten up" appellant several times, the most recent beating having occurred the evening before the fatal shooting. After being rescued from that encounter with the victim, appellant had unsuccessfully sought from his brother a gun in order to "get" the victim because he was tired of the victim's continual assaults. The next day (the day of the shooting), appellant sought companions to go to Statesboro to purchase a gun. Later that day, a friend loaned him an unloaded 20-gauge shotgun, and appellant, accompanied by others, purchased birdshot at a local convenience store. Appellant and his companions proceeded from the convenience store to Swainsboro, where appellant shot the victim. The State also played two post-arrest videotaped interviews with appellant in which he admitted the facts summarized above. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that appellant, with malice aforethought, fatally shot the victim. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. While cross-examining the first of three of appellant's companions who testified on behalf of the State, defense counsel queried, "[Y]ou have a deal with the district attorney, have you not . . . ," to which the district attorney immediately interposed an objection. After listening to argument outside the presence of the jury, wherein the district attorney repeatedly insisted that no deal had been made with the witnesses in exchange for their testimony, the trial court sustained the objection. Upon their return, the jury was instructed to disregard the question because it was improper. Appellant complains on appeal that the trial court erred when it refused to permit counsel to cross-examine the witnesses about their understanding of a promise of leniency from the district attorney.

Two issues of constitutional import are intertwined when a criminal defendant asserts that he was precluded from probing on cross-

---

amended August 12, was denied in a 16-page order on December 21, 1993. A notice of appeal was filed on January 18, 1994, and the case was docketed in this court on February 8. It was submitted for decision on briefs.

examination a witness' belief that he will receive a benefit for his testimony: the Due Process Clause and the right of confrontation guaranteed by the Sixth Amendment.

(a) Due process requires that evidence of any understanding or agreement, informal or formal, as to future prosecution of a witness on whose testimony the State's case almost entirely depends be disclosed by the prosecutor and be made known to the jury assessing the credibility of the witness. *Allen v. State*, 128 Ga. App. 361, 363-364 (196 SE2d 660) (1973), citing *Giglio v. United States*, 405 U. S. 150, 153 (92 SC 763, 31 LE2d 104) (1972). See also *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983).[2] A new trial is in order where evidence affecting the credibility of a witness whose reliability may be determinative of the guilt or innocence of the defendant existed before trial and was not disclosed. *Howell v. State*, 163 Ga. App. 445 (295 SE2d 329) (1982).

The district attorney assured the trial court that the State had made no deals with the witnesses, and appellant produced no evidence of the existence of an undisclosed "deal" between the State and any of the three witnesses/companions. *Williams v. State*, 161 Ga. App. 62 (2) (288 SE2d 861) (1982). As there was no evidence of a bargain between the State and any of the witnesses, we cannot say that a due process violation occurred. *Owens v. State*, supra. In addition, in light of appellant's incriminating statements, the State's case was not "almost entirely dependent" upon the testimony of the witness/companions, making a *Giglio/Allen* objection inapplicable. *Echols v. State*, 231 Ga. 633 (1) (203 SE2d 165) (1974). Finally, through the testimony of defense witnesses, the jury was made aware that two of the three witnesses had been told by third parties that they faced the possibility of prosecution until completion of appellant's trial. In light of the above, the trial court did not deprive appellant of due process when it ruled that appellant's questions were improper. See *Morris v. State*, 173 Ga. App. 663 (3) (327 SE2d 792) (1985).

(b) In addressing the scope of a defendant's Sixth Amendment right of confrontation, this court has recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination[,] [cits.]," and acknowledged the importance of permitting a defendant to search

---

[2] Recognizing that a witness facing criminal charges is aware that "an implication inherently exists" that his cooperation in the prosecution of another might result in the receipt of "support" from the prosecutor, our Court of Appeals has expanded the coverage of *Giglio/ Allen* by requiring that any conduct that encourages this belief be disclosed to the jury. *Coleman v. State*, 153 Ga. App. 888, 889-890 (267 SE2d 304) (1980). See also *Morris v. State*, 166 Ga. App. 137 (3) (303 SE2d 492) (1983).

for an agreement between the witness and the prosecution where the witness might have substantial reason to cooperate. *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). We noted in *Hines* that a witness may form a subconscious desire to assist the State which " ' "may cloud perception[,]" [cits.],' " and we determined that defense counsel was entitled to a reasonable cross-examination on the subject, as "[t]he relevant issue was whether the witness entertained any belief of personal benefit from testifying favorably for the prosecution. [Cits.]" *Baptiste v. State*, 190 Ga. App. 451 (3) (379 SE2d 165) (1989). In the case at bar, the trial court did not prevent appellant from cross-examining the witnesses about their hopes of personal benefit; the trial court ruled improper a question that presupposed the existence of an unproven "deal" between the State and the witness. There was no error as the trial court did not preclude all inquiry on a subject with respect to which appellant was entitled to a reasonable cross-examination. Compare *Hines*, supra, and *Owens v. State*, supra. See *Glaze v. State*, 261 Ga. 171 (4) (402 SE2d 729) (1991).

2. Appellant contends it was error to admit into evidence the weapon he surrendered and statements he made to law enforcement officers at the time of arrest because he had not then been advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He also contends that his subsequent videotaped statements, each of which was preceded by a recitation of *Miranda* rights, should have been suppressed as fruit of his initial statement. The arresting officers testified at the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), that while they were not sure which one of them had recited the warnings to appellant prior to the production of the shotgun and appellant's post-arrest statements, one of them had so informed appellant. Appellant testified that he had not been read his rights until after he had produced the shotgun and made incriminating statements. The trial court determined that appellant was informed of his rights and freely, willingly, and voluntarily made the statements to law enforcement officers without the slightest hope of benefit or the remotest fear of injury. A trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous. *Berry v. State*, 254 Ga. 101 (1) (326 SE2d 748) (1985). As appellant has not established that the trial court's findings were clearly erroneous, we affirm the trial court's decision.

3. At trial, appellant testified he was frustrated and confused during the videotaped interviews and, as a result, the interrogating officers "convinced [him] to twist everything around and go along with what they were saying." (T-329). Subsequently, defense counsel sought to introduce testimony of appellant's educational level and

mental capacity, which evidence, he contended, was relevant to the issue of the voluntariness of appellant's confession.[3] The trial court refused to allow the evidence, ruling that appellant's counsel had failed to comply with the notice requirements of Uniform Superior Court Rule 31.4 regarding the intent to raise the defense of insanity, mental illness, or mental incompetency.[4]

USCR 31.4 requires the defense to give written notice ten days before trial of its intent to raise the issue that the defendant was insane, mentally incompetent, or mentally ill at the time of the criminal acts with which he is charged, or at the time of trial. Even if we were to assume that evidence of a defendant's educational background and IQ test results constituted evidence of insanity, mental incompetence, or mental illness, appellant was not seeking to raise the issue of his mental status at the time of the crime or at the time of trial, but at the time he gave a confession to law enforcement officers. Thus, the rule was not applicable and the evidence should not have been excluded on this ground. While the erroneously excluded evidence went to the voluntariness of appellant's statement, an issue for the jury, the exclusion of the evidence was not reversible error in light of the overwhelming evidence against appellant.

4. Citing *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), appellant contends the trial court erred when it refused to admit evidence of the victim's acts of violence toward third parties.[5] At trial, the district attorney acknowledged that five days before the trial commenced, he and defense counsel, unaware of the *Chandler* decision,

---

[3] Defense counsel stated that he wished to present evidence that appellant had been enrolled in special education classes for grades 2-12 and had received a special education diploma, and that IQ tests administered on March 22, 1990, showed appellant as "mildly intellectually disabled," with poor reasoning and auditory processing skills.

[4] USCR 31.4 *Notice of Intention of Defense to Raise Issue of Insanity, Mental Illness or Mental Competency.*

(A) If, in any criminal proceeding, the defense intends to raise the issue that the defendant or accused was or is insane, mentally incompetent, or mentally ill at the time of [the] act or acts charged against him, or at the time of trial, such intention must be stated, in writing, in a pleading denominated as "Notice of Intent of Defense to Raise Issue of Insanity or Mental Incompetence." This notice shall be filed and served upon the prosecuting attorney in accordance with section 31.1 of these rules. Upon the filing of such notice, the judge shall determine from the prosecuting attorney and the defense attorney whether such issue requires any further mental examination of the accused, any further non-jury hearing relative to this special issue, or any specially empaneled jury to determine the issue on the special plea of insanity ahead of trial of the case on the merits.

(B) Except for good cause shown, the issue of insanity shall not be raised in the trial on the merits unless notice has been filed and served ahead of trial as provided in these rules.

[5] Defense counsel proffered certified copies of the victim's conviction for felony cruelty to a child (for which he had received first offender treatment), and misdemeanor battery (two counts).

had discussed the possibility of defense counsel introducing acts of the victim involving third parties. While the district attorney could not recall being told the specific acts to be so used, defense counsel stated that he informed the district attorney of his intent to introduce the victim's felony conviction for cruelty to a child. The trial court refused to allow the evidence after it determined that defense counsel had not given written notice of the intent to present such evidence to the district attorney. In denying appellant's motion for new trial, the trial court pointed out that appellant had failed to give the trial court pre-trial notice of his intent to present such evidence.

In *Chandler*, this court authorized the introduction of evidence of specific acts of violence by the victim against third persons when the defendant claimed his actions against the victim were justified. Recognizing that the Uniform Superior Court Rules did not provide a procedure governing the introduction of such evidence, this court set out an interim procedure, using USCR Rule 31.1 as a guide: the defendant gives pre-trial notice to the trial court of his intent to introduce such evidence, as well as the nature of the evidence; the trial court then takes "reasonable steps" to ensure that the State receives reasonable notice of the intent and the evidence. The trial court also takes "similar reasonable steps" to assure that the defendant is given reasonable notice of the State's intent to introduce rebuttal evidence, as well as the nature of that evidence.

The *Chandler* procedure sought to avoid a "battle by surprise" by providing the State with "reasonable notice" of the defendant's intent to introduce specified evidence of a victim's violent acts against third parties. In the case at bar, the trial court's decision to exclude appellant's proffered evidence was not error since the trial court had determined that defense counsel had not made known to the district attorney or the court the specified acts of violence by the victim against others which he intended to use. See *Miller v. State*, 263 Ga. 723 (2) (438 SE2d 81) (1994).

Effective December 30, 1993, the Uniform Superior Court Rules were amended to include Rule 31.6: "Notice of Intention of Defense to Present Evidence of Acts of Violence by the Victim." This rule authorizes the use of "relevant specific acts of violence by the victim against the defendant or third persons" if written notice containing specified material is served upon the state's counsel and is filed at least ten days before trial. Trial courts monitoring compliance with this new rule should employ the same tools used to adjudicate compliance with USCR 31.3, and be even-handed as between the State and defendants in doing so. See *Ledford v. State*, 264 Ga. 60 (6) (c) (439 SE2d 917) (1994). See also *Syfrett v. State*, 210 Ga. App. 185, 190-191 (435 SE2d 470) (1993) (Blackburn, J., concurring specially).

5. Appellant next complains that the trial court erroneously ruled

inadmissible evidence of the victim's general reputation for violence.[6] Such reputation evidence is admissible "to show the defendant's state of mind (reasonable fear) at the time of the incident in question." *Bennett v. State*, 254 Ga. 162 (3) (a) (326 SE2d 438) (1985). However, a defendant may show a victim's reputation for violence only where "the defendant makes a prima facie showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly trying to defend himself. [Cits.]" *Chapman v. State*, 258 Ga. 214 (2) (367 SE2d 541) (1988). In the case at bar, since there was no evidence that the victim assaulted the defendant, the trial court did not err in refusing to allow evidence of the victim's general reputation for violence.[7]

6. Appellant's remaining enumerations of error concern the content of the trial court's instructions to the jury. The trial court did not err when, in lieu of appellant's requested charge derived from *Richmond &c. R. Co. v. Kerler*, 88 Ga. 39 (13 SE 833) (1891), it gave the pattern instruction on the credibility to be given statements made by the defendant. See Suggested Pattern Jury Instructions, Vol. II, Criminal Cases (2d ed.), Part 3 (S) (7). Appellant was not entitled to a jury charge on involuntary manslaughter as the unlawful use of a deadly weapon to shoot the victim constituted the felony of aggravated assault. *Harris v. State*, 257 Ga. 385 (2) (359 SE2d 675) (1987). Appellant was not entitled to a charge on aggravated assault as the evidence was uncontradicted that the victim died (*Sanders v. State*, 251 Ga. 70 (4) (303 SE2d 13) (1983)), or a charge on reckless conduct. *Gardner v. State*, 263 Ga. 197 (7) (429 SE2d 657) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 28, 1994.

*Robert S. Reeves,* for appellant.
*Richard A. Malone, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for appellee.

---

[6] Defense counsel made a proffer of the evidence of the victim's reputation for violence: one witness would have testified that the victim's reputation was one of being a troublemaker and one who provoked fights; another witness would have testified that the victim had a reputation for starting fights and had been known to carry a gun.

[7] While this court worked "a substantial change" to the rules governing the admission of evidence of the victim's violence in *Chandler v. State*, supra (*Syfrett v. State*, supra at 187), that change involved only evidence of a victim's specific acts of violence toward third parties, and did not affect the requirements for admission of evidence of the victim's general reputation for violence.